**CASE NO. 2023-1750**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED,

*Appellant*

v.

NETFLIX, INC.,

*Appellee*

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2021-01298, IPR2021-01334 and IPR2021-01335

## PRINCIPAL BRIEF OF APPELLEE NETFLIX, INC.


SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Harper Batts
*hbatts@sheppardmullin.com*

Christopher Ponder
*cponder@sheppardmullin.com*

Jeffrey Liang
*jliang@sheppardmullin.com*

1540 El Camino Real, Suite 120
Menlo Park, CA 94025

Telephone: 650.815.2600

*Attorneys for Appellee Netflix, Inc.*

## PATENT CLAIMS AT ISSUE

The patent claims at issue are claims 1-29 of U.S. Patent No. 10,911,938. The bracketed letters in the claims below were used by the Board to refer to certain clauses as indicated. Emphasis is added to the claim terms at issue. Claim 1 is representative of independent claims 1, 23, and 27 for purposes of this appeal:

1. [1pre] A system comprising:

[1a] a plurality of computing devices connected via one or more networks,

[1b] wherein the system is configured to receive login information corresponding to a first user;

[1c] identify the first user based on the login information;

[1d] retrieve *user configuration information* corresponding to the first user;

[1e] *control provision of a media content streaming service* to a first computing device of the plurality of computing devices based on the *user configuration information* corresponding to the first user;

[1f] update the user configuration information corresponding to the first user *based on the provision of the media content streaming service* to the first computing device;

[1g] receive login information corresponding to the first user from a second computing device of the plurality of computing devices;

[1h] identify the first user based on the login information received from the second computing device;

[1i] retrieve the updated *user configuration information* corresponding to the first user; and

[1j] *control provision of the media content streaming service* to the second computing device based on the updated user configuration information corresponding to the first user.

6. The system of claim 1, wherein at least one of the plurality of computing devices is configured to *dynamically develop* the user configuration information corresponding to the first user based on the provision of the media content streaming service to the first computing device.

Dependent claim 12 is representative of dependent claims 12, 16, 26, and 29:

12. The system of claim 11, wherein at least one of the plurality of computing devices is configured to *control provision of the media content streaming service* to the first computing device and the second computing device by selecting a version of content, from a plurality of stored versions of content, to be streamed to the first computing device or the second computing device based on the information identifying content reproduction capabilities corresponding to the first computing device or the second computing device.

Dependent claim 18 is representative of dependent claims 17 and 18:

18. The system of claim 1, wherein at least one of the plurality of computing devices is configured to *control provision of the media content streaming service* to the first computing device and the second computing device from a server remote from the system, the first computing device and the second computing device.

# CERTIFICATE OF INTEREST

Counsel for Appellee Netflix, Inc. certifies the following information is accurate and complete to the best of my knowledge:

**1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Netflix, Inc.

**2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

Netflix Streaming Services, Inc.

**3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

None.

**5. Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

Yes.

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information**. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.4(a)(4).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: November 6, 2023

*/s/ Harper Batts*

Harper Batts
SHEPPARD MULLIN
RICHTER & HAMPTON LLP
1540 El Camino Real, Suite 120
Menlo Park, CA 94025

# TABLE OF CONTENTS

**Page**

PATENT CLAIMS AT ISSUE ........ I

CERTIFICATE OF INTEREST ........ III

TABLE OF AUTHORITIES ........ VIII

STATEMENT OF RELATED CASES ........ X

I. INTRODUCTION ........ 1

II. STATEMENT OF THE CASE ........ 2

A. The ’938 Patent ........ 2

B. The Lee Reference ........ 3

C. The Board’s Final Written Decision ........ 4

1. Netflix’s Expert ........ 5

2. Claim Construction ........ 5

a. “User Configuration Information” (UCI) ........ 5

b. “Provision of a Media Content Streaming Service” ........ 6

c. “Dynamically Develop” ........ 7

3. User Configuration Information (UCI) Findings ........ 7

III. SUMMARY OF THE ARGUMENT ........ 9

IV. ARGUMENT ........ 11

A. Standard of Review ........ 11

B. The Board did not err by finding the challenged claims unpatentable without relying on Netflix’s expert testimony ........ 12

C. The Board did not err by relying upon an allegedly incomplete prior art reference. ........ 18

D. The Board correctly found that Lee renders independent claims 1, 23, and 27 obvious. ........ 20

1. Lee’s User Preferences ........ 20

a. The Board correctly found that Lee suggests updating user preferences and that updating user preferences would have been obvious. ........ 21

b. The Board's findings are not premised on erroneously rejecting Avago's narrow construction of "based on the provision of the media content streaming service." ....................24

2. Lee's Usage History....................30

a. The Board correctly found that Lee's usage history is UCI because it is used to configure the recommended content list....................30

b. The Board correctly found that Lee's usage history is retrieved, updated, and used to control provision of the media content streaming service....................35

c. The Board did not err in finding Avago's untimely arguments forfeited and unpersuasive....................38

3. Lee's User Conditions (Stop Points) ....................39

a. The Board correctly found that Lee's stop points are used to control provision of the media content streaming service....................40

b. The Board correctly found that Lee's stop points are updated....................41

4. Lee's Client Device Information ....................43

a. The Board correctly found that Lee's client device information relates to users....................44

b. The Board did not broaden the construction of UCI to encompass client device information not related to a user....................45

c. Lee's client device information is updated based on provision of the media content streaming service....................47

d. The Board did not err in finding Avago's untimely arguments forfeited and unpersuasive....................50

E. The Board correctly found that Lee renders claim 6 obvious....................51

F. The Board correctly found that Lee renders claims 17 and 18 obvious....................53

G. The Board correctly found that the combination of Lee and Smith renders claims 12, 16, 26 and 29 obvious. ....56

V. CONCLUSION....61

CERTIFICATE OF COMPLIANCE....62

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Alexsam, Inc. v. IDT Corp.*
715 F.3d 1336 (Fed. Cir. 2013) ....................14

*Allied Erecting v. Genesis Attachments*
825 F. 3d 1373 (Fed. Cir. 2016) ....................59

*Apple Inc. v. Andrea Elecs. Corp.*
949 F.3d 697 (Fed. Cir. 2020) ....................12, 56

*Apple Inc. v. MPH Technologies Oy*
28 F.4th 254 (Fed. Cir. 2022) ....................56

*Aspex Eyewear, Inc. v. Concepts In Optics, Inc.*
111 F. App'x 582 (Fed. Cir. 2004) ....................14

*In re Bayer Aktiengesellschaft*
488 F.3d 960 (Fed. Cir. 2007) ....................12

*Belden Inc. v. Berk-Tek LLC*
805 F.3d 1064 (Fed. Cir. 2015) ....................14

*Bradium Techs. LLC v. Iancu*
923 F.3d 1032 (Fed. Cir. 2019) ....................21

*Electro Med. Sys., S.A. v. Cooper Life Sci., Inc.*
34 F.3d 1048 (Fed. Cir. 1994) ....................28

*Fanduel, Inc. v. Interactive Games LLC*
966 F.3d 1334 (Fed. Cir. 2020) ....................17

*In re Fulton*
391 F.3d 1195 (Fed. Cir. 2004) ....................59

*Honeywell Int'l Inc. v. Arkema Inc.*
939 F.3d 1345 (Fed. Cir. 2019) ....................12

*Intel Corp. v. Pact XPP Schweiz AG*
61 F.4th 1373 (Fed. Cir. 2023) ....................57

*Interactive Gift Express, Inc. v. Compuserve Inc.*
256 F.3d 1323 (Fed. Cir. 2001) ....................................................................50

*IXI IP, LLC v. Samsung Elecs. Co.*
903 F.3d 1257 (Fed. Cir. 2018) ..............................................................11, 12

*KSR Int'l Co. v. Teleflex, Inc.*
550 U.S. 398 (2007)..........................................................................................58

*Mformation Techs., Inc. v. Research in Motion Ltd.*
764 F.3d 1392 (Fed. Cir. 2014) ....................................................................50

*Nobel Biocare Servs. AG v. Instradent USA, Inc.*
903 F.3d 1365 (Fed. Cir. 2018) ....................................................................28

*Pavo Sols. LLC v. Kingston Tech. Co.*
711 Fed. Appx. 1020 (Fed. Cir. 2017)..........................................................59

*Perfect Web Techs. Inc. v. InfoUSA, Inc.*
587 F.3d 1324 ..................................................................................................43

*Proveris Sci. Corp. v. Innovasystems, Inc.*
536 F.3d 1256 (Fed. Cir. 2008) ....................................................................14

*Synopsys, Inc. v. Mentor Graphics Corp.*
814 F.3d 1309 (Fed. Cir. 2016) ....................................................................14

*VirnetX Inc. v. Apple Inc.*
665 F. App'x 880 (Fed. Cir. 2016) ................................................................14

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rules 28(a)(4) and 47.5, Appellee Netflix, Inc. states that to the best of its knowledge:

(a) No appeals from the same proceedings were previously before this or any other appellate court.

(b) The ’938 patent is asserted against Netflix, Inc. in *CA, Inc. and Avago Technologies International Sales Pte. Limited v. Netflix, Inc.*, No. 3:22-cv-00373 (N.D. Cal.). There are no other cases pending in any other court or agency that will directly affect or be directly affected by this Court’s decision in the pending appeal.

# I. INTRODUCTION

The Board agreed with Netflix that Lee teaches four separate types of user configuration information (UCI), and that each type *alone* renders the independent claims obvious. Rather than pinpoint material errors in the Final Written Decision (FWD), Avago throws a myriad of arguments against the wall. With respect to claim construction, the Board evaluated UCI under both parties' constructions, and still found the claims unpatentable. Avago reprises a number of other claim construction arguments – many of which seek to narrow the claims without proposing an express construction – that the Board properly rejected as unsupported by evidence.

With respect to Lee's teachings, Avago is unable to undermine the substantial evidence supporting the Board's findings, and instead seeks reconsideration of the Board's factual findings. Avago obscures its arguments that the Board correctly found forfeited by commingling them with its other arguments. This Court should not entertain the forfeited arguments because Avago has not demonstrated any abuse of discretion, and its arguments fail to even acknowledge that standard of review. As explained below, all of Avago's arguments lack merit and there are numerous bases for affirming the FWD.

## II. STATEMENT OF THE CASE

Avago's statement of the case alleges that the Board made additional errors that are not raised in its arguments. In the interest of relevance and brevity, Netflix constrains its statement to presenting additional facts that are germane to the arguments presented in this appeal. Netflix generally disagrees with Avago's characterization of the Board's findings, and submits that the FWD accurately states the Board's findings.

### A. The '938 Patent

Avago's description of the '938 patent is notable in that it highlights how the challenged claims are much broader than what the '938 patent describes as its invention. Avago asserts that the patent is directed to a system of personal electronic devices (Br. 4), which the specification states "may comprise a portable handheld communication device, such as a Smartphone, a cellphone, a PDA, [or] a multimedia device[.]" Appx97(4:9-15). And yet, the claims are broader, reciting a system comprising "a plurality of computing devices." Appx103(15:53-55). Avago also asserts that the '938 patent "teaches that the UCI can be used to control provision of streaming services." Br. 4. And yet, the specification only makes passing references to streaming, and does not explain how to control provision of a media content streaming service, let alone how to accomplish media content streaming.

## B. The Lee Reference

Lee teaches a "Seamless Data Streaming System Based on User Preference and Device Information" where the user may seamlessly switch between different client devices. Appx1129-1130(title, abs., §1). Lee describes providing a streaming system "that enables device users to get an intelligent recommendation regarding the media content they want[.]" Appx1130(§1). The user logs in with a user ID and password, and then user preferences, usage history, and other user information is used to create customized recommendations:

> **3.1. Log on**
>
> Client 1 requests for connection by logging on the server agent. The server agent identifies the user based on user ID and password, and implements user certification. If one is already a registered user, one is presented with a recommended content list created based on usage history, which is the information of the content the user has played through the streaming service and the details of the user profile, which is based on the information set by users regarding their preferred content title, actor and actress, director, producer, and genre. If one is using the service for the first time, the user profile will be saved to create the content list that will be available after one logs on and identification is approved.

Appx1133(§3.1), Appx1131-1132(§2.1, §2.4.2). Lee is not limited to recommendations made based on user preferences because it expressly discloses that the "recommended content list" is "created based on usage history, which is the information of the content the user has played through the streaming service and the details of the user profile[.]" Appx1133(§3.1).

Figure 5 further illustrates how the user receives a customized streaming experience, based on information associated with the user that is stored at the server, even when the user logs in from a different device:




Figure 5. Seamless Streaming Service Using Stop Point

Appx1133(Fig. 5).

## C. The Board's Final Written Decision

Netflix filed three Petitions for Inter Partes Review (IPR) challenging claims 1-30. Appx2. The Board instituted IPR and consolidated the Petitions into a single proceeding. *Id.* The Board issued a thorough 86-page Final Written Decision that found all challenged claims unpatentable except for claim 30, which recites means-plus-function limitations. Appx87, Appx58-60.

### 1. Netflix's Expert

Avago contended that Netflix's expert, Mr. Stephen Gray does not possess the level of ordinary skill because he does not meet the formal education requirement and has insufficient work experience in streaming content services. Netflix responded that Mr. Gray had years of relevant work experience. Appx3453-3454 (citing Appx3517-3518(Reply Decl.)(describing work experience)). The Board found it unnecessary to resolve the dispute over Mr. Gray's qualifications because it "need not rely on Mr. Gray's testimony" to make its unpatentability determinations "[g]iven Lee's disclosure, Petitioner's contentions, and the technology at issue." Appx13-14. The FWD demonstrates that the Board relied upon the teachings of the prior art, as well as the concessions by Avago and its expert.

### 2. Claim Construction

#### a. "User Configuration Information" (UCI)

The Board found it unnecessary to decide between the parties' proposed constructions of UCI because it found all limitations satisfied even under Avago's construction. Appx16. Avago's additional implicit limitations, which would require UCI to be unique to a user and limited to configuring a device, were rejected. Appx16-17. The specification indicates that UCI is a broad term and does not require limiting UCI to be unique to a user or be limited to configuring a device. Appx90(abs.), Appx97(3:33-37, 4:33-37), Appx99(7:41-8:6),

Appx102(14:56-59). The specification also states that UCI may even be shared by a group of users. Appx99(8:7-9).

#### b. "Provision of a Media Content Streaming Service"

Neither party sought construction of "provision of a media content streaming service." Appx18. The Board explained that the "claimed phrase is 'provision of a … service,' and the words 'media content streaming' specify the type of 'service' provided." Appx18-19. In other words, a media content streaming *service* is not limited to media content streaming alone, but also encompasses other features of providing the service, such as the user interface. Appx18, Appx33-34, Appx54-55. Thus, with respect to "control provision of a media content streaming service," the phrase is not limited to only controlling the media content streaming alone. Appx18-19.

With respect to updating UCI "based on the provision of the media content streaming service," the Board rejected Avago's implicit construction that would exclude a user's manual update to the user's preferences. Appx33-35. The specification repeatedly describes manual and automatic updates of UCI. Appx90(abs.), Appx97(3:37-42), Appx102(13:25-32, 14:60-64). It also describes updating UCI based on commands through the system's user interface. Appx101(11:44-52).

**c. "Dynamically Develop"**

The Board found that "dynamically develop[ing]" UCI is satisfied by making changes to UCI "as needed and appropriate given the use of the system." Appx61. The Board's construction is supported by Avago's dictionary evidence that defined "dynamic" as "[d]ependent on changing conditions or parameters" and "[i]n computers, an action or process which occurs when needed." Appx61 (quoting Appx3386).

**3. User Configuration Information (UCI) Findings**

Avago only disputed limitations 1d, 1e, 1f, 1i, and 1j, all of which relate to UCI. Br. 18. The Board found that all four types of UCI presented by Netflix satisfy these limitations, and that each type alone satisfies the limitations. Appx30.

With respect to Lee's user preferences, Avago disputed limitation 1f. Appx31. The Board found that Lee itself suggests updating user preferences as required for limitation 1f, ***and*** that it would have been obvious to update user preferences. Appx32-33. The Board found Lee's updates satisfy "based on the provision of the media content streaming service" because Lee's server "updates user preferences as a result of (and using) the user interface." Appx33-35.

With respect to Lee's usage history, Avago disputed that usage history is UCI, and limitations 1d and 1e. Appx35-36. The Board found that Lee's usage history is UCI because Lee discloses that usage history is associated with a user

and used to configure a recommended content list for the user. Appx36-38. The Board found that a number of Avago's arguments were untimely and forfeited. Appx39-40. The Board proceeded to explain why the forfeited arguments also fail on the merits. Appx40-45.

With respect to Lee's user conditions (stop points), Avago disputed limitations 1e and 1j. Appx45. The Board found Lee teaches or suggests 1e and 1j. Appx45. The Board found Lee's operation satisfies controlling provision of a media content streaming service based on stop points. Appx45-49. The Board found that Avago's argument relating to the TV-Anytime Specification was untimely, forfeited, and additionally explained why the argument failed on the merits. Appx48-49.

With respect to Lee's client device information, Avago disputed that client device information is UCI, and limitations 1d, 1e and 1f. Appx49. The Board found that Lee's client device information is UCI in part because Lee's client device information is related users. Appx49-50, Appx52. The Board found that Lee's client device information is updated based on provision of the media content streaming service and that it is retrieved. Appx50-51, Appx52-55. The Board found that certain arguments were untimely and forfeited, and explained why they were unpersuasive or insufficiently explained. Appx55-56.

## III. SUMMARY OF THE ARGUMENT

Claim 1 is representative of the independent claims. The central dispute involves the limitations relating to "user configuration information" (UCI). The Board agreed with Netflix that Lee teaches four different types of UCI and that each type alone satisfies the disputed limitations. Therefore, the findings for each type of Lee's UCI provides an adequate and independent basis for affirming the unpatentability of claims 1, 23, and 27. Avago objects to the Board's findings on numerous grounds, all of which lack merit.

For Lee's user preferences, the Board correctly found that Lee teaches "updating" user preferences. The Board also correctly rejected Avago's narrow interpretation of "based on the provision of the media content streaming service" that would exclude any update that results from a manual input by the user.

For Lee's usage history, the Board correctly found that it is UCI because Lee teaches that usage history is used to configure a recommended content list for the user. The Board correctly rejected Avago's additional arguments, and found that Lee's usage history is retrieved, updated, and used to control the provision of the media content streaming service.

For Lee's user conditions (e.g., stop points), the Board correctly found that stop points are used to control provision of the media content streaming service because the user selects to continue playing content, and the server uses the stored

stop point to resume content playback from that stop point. The Board also correctly found that Lee teaches or suggests updating stop points because it was well-known for users to stop and start playing content repeatedly.

For Lee's client device information, the Board correctly found that it is UCI because Lee teaches that the client device information is sent to Lee's server when the user requests a connection, and the client device information is stored in a mapping table with the user's identification. The Board correctly rejected Avago's narrow, implied construction that would require UCI to be unique to a user. Avago's argument that client device information is not updated lacks merit because even Avago admits that client device information changes when the user switches devices and logs in to the server.

Avago raises objections to the Board finding that some of its arguments were untimely raised in its Sur-Reply and thus forfeited. But Avago fails to acknowledge that it bears the burden of showing that the Board abused its discretion, and its brief does not mention abuse of discretion because it cannot make that showing. In any event, any error is harmless because the Board not only found Avago's arguments forfeited, it also explained why the forfeited arguments were unpersuasive.

The Board did not legally err in rendering its obviousness findings without relying upon Netflix's expert testimony. Avago disputed that Netflix's expert has

the necessary level of skill in the art. The Board found that it was unnecessary to decide whether Netflix's expert's work experience qualified him as a POSITA because it readily found the challenged claims unpatentable based on the clear teachings of the prior art. By virtue of its technical knowledge and expertise, the Board was certainly capable of evaluating the evidence and argument presented.

The Board also did not err by relying upon an allegedly "incomplete" Lee reference. Avago has failed to demonstrate that the TV-Anywhere Specification referenced by Lee is necessary to understand Lee's teachings as they relate to disputed limitations. Not only did the Board correctly find that Avago's TV-Anywhere argument lacked merit, it also found that it was untimely raised for the first time in Avago's Sur-Reply.

Avago's remaining arguments are directed to certain dependent claims, and also lack merit. The Final Written Decision should be affirmed.

## IV. ARGUMENT

### A. Standard of Review

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *IXI IP, LLC v. Samsung Elecs. Co.*, 903 F.3d 1257, 1262 (Fed. Cir. 2018). "Where two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained by this

court as supported by substantial evidence." *Id.* (citing *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007)).

The Board's determination that a party exceeded the scope of a proper reply, and its decision to ignore an argument, is reviewed for abuse of discretion. *See Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 705 (Fed. Cir. 2020). The Court must set aside the Board's decision if it "(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) involves a record that contains no evidence on which the Board could rationally base its decision." *Honeywell Int'l Inc. v. Arkema Inc.*, 939 F.3d 1345, 1348 (Fed. Cir. 2019).

### B. The Board did not err by finding the challenged claims unpatentable without relying on Netflix's expert testimony.

The Board defined the level of ordinary skill as (1) a bachelor's degree in computer science, electrical engineering, or a similar field and three years of experience with networked communication devices, or (2) a master's degree in electrical engineering, computer science, or a similar field with an emphasis in networked communication devices. Appx11. Notably, Avago contended that the level of skill should require experience with streaming content rather than networked communication devices. Appx3035.

Avago contended that Netflix's expert, Mr. Stephen Gray, does not possess the level of ordinary skill in the art because he does not meet the formal education

requirement and has insufficient work experience in streaming content services. Netflix responded that Mr. Gray had years of relevant work experience, including technical experience with streaming technology since the 1990s. Appx3453. As chief technology officer for two companies, Mr. Gray "was responsible for the design and development of content streaming services, which included hands-on engineering design with Internet and Web protocols." Appx3453 (citing Appx3517-3518(Gray Reply Decl.)(describing work experience)). The Board found it unnecessary to resolve the dispute over Mr. Gray's qualifications because it "need not rely on Mr. Gray's testimony" to make its unpatentability determinations "[g]iven Lee's disclosure, Petitioner's contentions, and the technology at issue." Appx13-14.

Avago criticizes the Board's conclusions regarding what a POSITA would have understood with respect to the disclosures of Lee and Smith as being unsupported by substantial evidence because the "the Board had no expert evidence to support its conclusion as to how one skilled in the art would have interpreted the patent claims and the references at issue." Br. 31-36. However, Avago's criticism lacks merit because it ignores that the Board is not required to rely on any expert testimony, and Avago has not demonstrated that expert testimony was necessary to resolve the issues on which it appeals.

Even Avago concedes that the Board does not need to rely upon expert testimony in all cases. Br. 33 (citing *VirnetX Inc. v. Apple Inc.*, 665 F. App'x 880, 884-85 (Fed. Cir. 2016)). This Court has noted that there is no rule requiring expert guidance for PTAB judges, because with their expertise, they may often find it easier to understand and explain prior art teachings even without expert assistance. *See Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1079 (Fed. Cir. 2015).

In arguing that expert testimony is required, Avago cites appeals from district court judgments that are inapposite. Br. 34 (citing *Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256 (Fed. Cir. 2008), *Aspex Eyewear, Inc. v. Concepts In Optics, Inc.*, 111 F. App'x 582 (Fed. Cir. 2004), and *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336 (Fed. Cir. 2013)). Unlike those appeals, the present appeal is from a Board decision. This Court has recognized the Board's expertise and ability to understand the teachings and suggestions of prior art without expert assistance. *Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1320 (Fed. Cir. 2016) ("In the context of inter partes reviews, 'Board members, because of expertise, may more often find it easier to understand and soundly explain the teachings and suggestions of prior art without expert assistance[.]'") (quoting *Belden*, 805 F.3d at 1079).

Despite conceding that no rule requires the Board to rely upon expert testimony, Avago asserts that expert testimony is necessary here because it involves "complex" technology. Br. 32-35. Specifically, Avago characterizes the relevant technology as "the system of networked communication devices providing streaming media content and self-configuring based on user preference information," and calls it "complex." Br. 34. However, the technology relating to the '938 patent and the cited references in this case is not complex. The '938 patent only makes passing references to streaming, and does not explain how to provide a streaming service. Even Avago's expert admitted that "the different ways that people accessed video streaming services" "is not really a very specialized … topic[.]" Appx3695-3697(161:10-163:5). Additionally, Avago's position is contradicted by its own expert testimony about the simple nature of the technology in question:

> Q. [Y]ou have given a lot of time to thinking about the scope of the challenge claims, right?
> A. Of course, yes.
> Q. So what is it that's so hard to answer about whether the step of controlling provision of a media content streaming service, whether that can be satisfied if the user is clicking things?
> Why is it so hard to answer that in the context of Netflix but so easy for you to answer that in the context of Lee?
> A. Because in Lee there's a very clear, basically, a reference of what we -- very detailed limitation, very detailed in my declaration about how they use it, using

> that information in inputting that device in the client, too, which is illustrated in Figure 8 in Lee. …
> Q. … And we're not actually talking about something highly technical here. We're just talking about how a user clicks videos to watch Netflix, right?
> A. Yes.

Appx3809-3810(AlRegib Dep.)(275:9-276:11).

Avago complains that the Board "used Netflix's attorney argument for the foundation of its findings." Br. 31-32. Not so. As Avago acknowledges, the Board expressly recognized that attorney arguments have little probative value. Br. 32; Appx 41(n.20). There is nothing improper about the Board using the Petition as a roadmap to identify the salient disclosures of the prior art.

Avago argues, "Netflix relied heavily on its expert to describe and explain the content of the references and their application to the Challenged Claims" and "the Board itself relied on Mr. Gray's observations and analysis of the references when deciding whether to institute the IPRs further demonstrates that expert analysis is necessary[.]" Br. 34-35. But Avago's argument misses the mark – whether Mr. Gray's testimony provides *further* support for invalidating the challenged claims does not dictate whether substantial evidence supporting that the claims are unpatentable exists. While the Board relied on Mr. Gray's testimony at institution, it did not rely on that testimony in the FWD.

In any event, substantial evidence supports the Board's conclusions and analysis. This is not a situation where the Board was silent as to expert testimony.

Just because the Board did not rely on Mr. Gray's testimony does not mean it had to accept Avago's expert testimony. *Fanduel, Inc. v. Interactive Games LLC*, 966 F.3d 1334, 1344 (Fed. Cir. 2020) (rejecting suggestion that Board was required to defer to expert testimony when opponent did not provide opposing expert guidance where Board explained its reasons for disagreeing with the expert).

Indeed, the Board explained that it considered "all of Dr. AlRegib's cited testimony regarding technical matters, such as Lee's disclosure and an ordinary skilled artisan's knowledge and understanding." Appx57. Throughout the FWD, the Board provided its reasoning for why it did not agree with his opinions or did not give them substantial weight. *See, e.g.*, Appx12(n.12), Appx39, Appx47-48, Appx52, Appx55. The Board categorized the types of opinions that it accorded little weight, namely those that: "address [Dr. AlRegib's] understanding of the Petition or the sufficiency of Petitioner's contentions," "conclusory assertions that particular claim terms have a particular meaning," and technical opinions "where his testimony includes only a conclusory assertion[.]" Appx56-57.

But even more notable are two prominent instances where Dr. AlRegib's opinions were contradicted by the prior art or his own testimony. With respect to Lee's usage history, the Board found that Lee's Section 3.1 disclosure ("one is presented with a recommended content list created based on usage history…") (Appx1133) contradicted Dr. AlRegib's opinion that "the bare statement quoted

above falls far short of providing a POSITA with any reason to believe that Lee's disclosed system can provide content recommendations based on usage history…." Appx3138-3139(¶54). Appx39. And, with respect to Lee's client device information, the Board gave no weight to Dr. AlRegib's testimony when in "his direct testimony, Dr. AlRegib testifi[ed] that 'Lee's client device information consists of static information about a device,' but on cross-examination, he admitted that at least three of the types of information…are *not* static." Appx52 (citations omitted). Given the Board's clear explanation and evidence, the Board's weighing of the credibility of Dr. AlRegib's testimony and determinations regarding that testimony was not error.

### C. The Board did not err by relying upon an allegedly incomplete prior art reference.

Avago argues that the Board erred in rendering its obviousness findings because the Board made its determination "without considering the TV-Anytime Specification, which was not part of the record." Br. 36-39. Avago's argument fails for several reasons.

*First*, as the Board correctly found, Avago's argument regarding the TV-Anytime Specification was untimely. Appx 48-49. Without addressing the abuse of discretion standard required to reverse the Board's finding on this issue of untimely arguments, Avago argues, in a footnote, that it raised its TV-Anytime argument in its POR when it asserted that usage history is not UCI. Br. 39, n.3

(citing Appx3053-3054). But, in the cited portion of the POR, Avago merely complained that Netflix's expert was unable to explain "how the Mapping Table is influenced by the TV-Anytime Metadata Schema." Appx3053. That argument bears little resemblance to the argument it now presses, namely that Lee is a fatally incomplete reference without the separate TV-Anytime Specification. Avago's contention that its TV-Anytime argument was also timely raised in response to Netflix's Reply (Br. 39, n.3 (citing Appx3978, Appx3983)) lacks merit. Avago does not explain how the cited pages of the Sur-Reply respond to Netflix's Reply.

*Second*, as the Board correctly noted, "it would not have been persuasive because the TV-Anytime Specification has no apparent relevance to the disputed issues[.]" Appx48-49. Avago offers attorney argument that "[t]he TV-Anytime Specification is necessary to understand Lee." Br. 36-38. In its attempt to explain the importance, Avago refers to a number of terms like "Metadata," "XML Metadata Schema," "Database Manager," "User Manager," and "Mapping Table" to argue that "[t]hese definitions and the associated defined terms concerned critical aspects of the teachings of Lee[.]" Br. 37-38. However, Avago does not establish the necessity of considering the TV-Anytime Specification or any of the terms referenced therein for *the disputed issues*. For example, Avago asserts that "the Board made detailed findings concerning aspects of Lee that indisputably incorporate the TV-Anytime Specification[,]" such as finding that Lee's Usage

History database stores a list of previously viewed content when the Usage History database is defined by the TV-Anytime Specification. Br. 38. Yet, Avago does not explain why any definition in the TV-Anytime Specification is necessary to fully understand Lee's Usage History database, how the definition in the TV-Anytime Specification would have changed a POSITA's understanding regarding Lee's Usage History database, or how the Board's obviousness finding should have changed based on the different understanding.

Finally, this Court's decision *In re Enhanced Security Research, LLC* does not support vacating the Board's findings. 739 F.3d 1347, 1356-57 (Fed. Cir. 2014). In that case, the prior art reference itself was missing pages, and this Court nevertheless affirmed the Board's invalidity findings because there was no evidence suggesting "that the missing pages were necessary to an understanding of the pertinent parts of the reference." *Id.* at 1356. Here, there is no dispute that the Lee reference itself is complete.

## D. The Board correctly found that Lee renders independent claims 1, 23, and 27 obvious.

### 1. Lee's User Preferences

The Board correctly found that Lee's user preferences render obvious all limitations of claim 1. Avago only disputes limitation 1f, contending that substantial evidence does not support the Board's finding that Lee teaches updating user preference information (Br. 42-43), and that limitation 1f should be construed

to exclude "manual" updates to user preference information (Br. 40-42). This Court should affirm because substantial evidence supports the Board's finding that Lee teaches updating user preferences, and Avago's narrow construction of limitation 1f was correctly rejected.

**a. The Board correctly found that Lee suggests updating user preferences and that updating user preferences would have been obvious.**

Avago's substantial evidence arguments are less than a page long and fail to demonstrate error in the factual finding that Lee teaches updating user preferences. Br. 42-43. Moreover, Avago's arguments miss the mark because they fail to address the full scope of the findings for limitation 1f.

The Board found that Lee itself suggests[1] limitation 1f and, additionally, that the limitation would have been obvious in view of Lee's teachings and logic, judgment, and common sense: "we find that Lee suggests manually updating the user preferences using its user interface, and we find that such an update would have been obvious in view of Lee." Appx32. Avago ignores the Board's finding that Lee itself suggests updating user preferences and argues that the Board's additional finding that updating preferences would have been obvious is based on

[1] *See Bradium Techs. LLC v. Iancu,* 923 F.3d 1032, 1049 (Fed. Cir. 2019) (affirming the Board's finding of what a prior art reference would fairly suggest to a POSITA).

"unsupported assumptions and conclusory obviousness statements." Br. 43. Not so.

Avago does not dispute the finding that "Lee expressly teaches that a user can set his own preferences in a user interface when registering for the service." Appx32. Rather, Avago argues that Lee "*only discloses* that users can set their preferences in a user interface when registering for the service." Br. 42 (emphasis added). However, the Board correctly and reasonably found that "an ordinarily skilled artisan would have assumed that these preferences can be later changed by the user." Appx32. In making this finding, the Board relied upon Lee's broad teaching, evident from the abstract, that Lee's system *stores and manages* user preferences:

> [Lee's] system is also designed to be compatible with many users and different device environments through the home network by *storing/managing information* in the home server factors such as *user preferences*….

Appx1129(abs.)(emphasis added); Appx32. Avago has not and cannot demonstrate that storing and managing information – a broad concept – does not include updating information. The Board further relied upon Lee's teaching that user preferences are used to intelligently recommend media content to the user:

> This study proposes a data streaming system that enables device users to get an *intelligent recommendation* regarding the media content that [users] want *based on the user preferences* stored on the home server….

Appx1130(§1)(emphasis added); Appx32. Notably, Lee's user preferences include the user's *favorite* actor/actress and genres. Appx1131(§2.1). It does not require subject-matter expertise to know that a user's favorites change, or that recommendations are not intelligent if they recommend media content from a genre that is no longer the user's favorite. The Board reasonably concluded that Lee suggests updating user preferences (or at least that it would have been obvious) because a POSITA would have recognized that user preferences, such as favorite actor/actress and genre, change and that updating user preferences to account for such changes would provide intelligent recommendations for content. Therefore, substantial evidence supports the Board's finding that Lee alone suggests updating user preferences and its additional finding that updating user preferences would have been obvious.

Avago's additional argument, that the Board failed to explain a motivation to modify Lee or show a likelihood of success (Br. 43), lacks merit for several reasons. *First*, it ignores the Board's first finding that Lee suggests updating user preferences itself, which does not involve modifying Lee. *See* Appx32.

*Second*, with respect to the Board's additional obviousness finding, Avago failed to present this argument to the Board and the argument was thus forfeited. The Petition contended that it would have been obvious to allow the user to change preferences through Lee's user interface because user preferences change.

Appx150. The Institution Decision credited this contention. Appx723 ("Petitioner contends that it would have been obvious in light of Lee's teachings to update user preferences manually via Lee's user profile interface."). But, Avago only argued that such an update through the user interface does not satisfy limitation 1f because it is based on the user's manual input rather than based on the provision of the streaming service. Appx3049(POR). Avago did not raise motivation to modify or likelihood of success for this contention.

Instead, Avago raised motivation to combine (not motivation to *modify*) and likelihood of success for the Petition's alternative contention, which involved automatically updating user preferences based upon the user's viewing habits. Appx3050-3051(POR). The expert testimony Avago asserts was ignored (Br. 43 (citing Appx3132-3134(¶¶45-46))) is directed to this alternative contention, which Avago's expert argued involved combining Lee with a recommendation engine. Because Avago did not present its motivation to modify or likelihood of success argument for manual updates to the Board, it was forfeited.

#### b. The Board's findings are not premised on erroneously rejecting Avago's narrow construction of "based on the provision of the media content streaming service."

Avago argues that the Board's findings rely upon an erroneously broad construction of "based on the provision of the media content streaming service." Br. 40-42. However, Avago's narrow construction is not supported by the

evidence, and fails to account for the Board's factual findings. More specifically, "based on the provision of the media content streaming service" does not exclude "manual updates," nor does it exclude a user's input to a user interface that causes a server to update its database of user preferences.

The Board found that "Lee's server updates the user preferences, as required by element 1f, because Lee indicates that its server updates its database when a user makes a manual update to his preferences." Appx32. The Board further found that a POSITA "would have understood that a user's manual update to his preferences would have caused a corresponding update to the preferences stored in the user preferences database of Lee's server. Appx32-33. The Board carefully cited to each portion of Lee's disclosure that describes the path taken by user preference information through the components of Lee's client and server shown in Figure 3, including from the client streaming manager, to the client's soap processor, to the server's soap processor, to the server's user manager. Appx32-33 (citing Appx1131(§2.1, §2.2.3, Fig. 3), Appx1132(§2.4.3)).




**Figure 3. Streaming System Structure**

The Board further found that the change in user preferences is "'based on the provision of the media content streaming service to the first computing device' because the server updates user preferences as a result of (and using) the user interface." Appx33. Importantly, the Board made the factual finding that "Lee's service includes both its content streaming as well as functions that facilitate this streaming, such as its logon screen, user preference registration, and content recommendations." Appx33(n.17). Avago does not dispute this finding that Lee's streaming service includes its user interface.

Instead, Avago argues that the Board erred by construing "based on the provision of the media content streaming" to "encompass manual updates." Br. 40.

More specifically, Avago contends that the claim requires "that the *system* uses the provision of the multimedia content streaming service to update the UCI." Br. 41. Avago's narrow construction of limitation 1f is not supported by evidence and contradicts its position in district court.

Claim 1 recites "wherein the system is configured to…update the user configuration information corresponding to the first user *based on the provision of the media content streaming service* to the first computing device." Appx103(15:55-67)(emphasis added). There is no clear indication that the patentee intended to exclude manual updates of UCI. To the contrary, the specification repeatedly describes manual and automatic updates of UCI:

> The generation, *updating*, and/or storage of the user configuration information may be performed *manually* and/or automatically, and may be performed directly within the first electronic device and/or via networked devices, which may communicatively coupled to the first electronic device.

Appx90(abs.)(emphasis added), Appx97(3:37-42), Appx102(13:25-32, 14:60-64). In each of these passages, manual updates are described before automatic updates. Furthermore, the specification describes updating UCI based on commands through the system's user interface:

> The generated user configuration information may be updated. The updating of the user configuration information may be performed manually, based on user commands for example, which may communicated directly into the system 150 via the user interface 166,

> and/or indirectly via the communication interface modules 164. In some instances, the updating of the user configuration information may be performed automatically, based on pre-determined conditions.

Appx101(11:44-52). Although Avago sought to distinguish these passages by alleging they do not describe updating UCI "based on the provision of a media content streaming service," the Board correctly observed that "the Specification includes *no* reference to such an update." Appx35. Avago argues that "the claims need not cover every disclosure in the specification" (Br. 41), but it is also well-established that "there is a strong presumption against a claim construction that excludes a disclosed embodiment." *Nobel Biocare Servs. AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1381 (Fed. Cir. 2018) (quotation omitted). Avago cannot overcome that strong presumption. Moreover, the claim recites "update" without a manual or automatic qualifier, which indicates that the claim should be accorded broader scope. *See Electro Med. Sys., S.A. v. Cooper Life Sci., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) ("particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments").

Turning to the extrinsic evidence, this Court, like the Board, should give no weight to Avago's conclusory expert testimony. Dr. AlRegib's opinion is devoid of analysis or supporting evidence. Appx3131-3132(¶44) ("In my view, a POSITA would understand that a manual update to user preferences, through a user

interface, is not the same as the system updating the user preferences based on provision of the media content streaming service.”).

Moreover, Avago’s narrow construction that would exclude updates based upon input from the user is contradicted by its infringement allegations. The Original Complaint and accompanying claim chart pointed to a user’s manual assignment of ratings when using Netflix:

> 121. The Netflix service updates the user’s profile based on the provision of the media content streaming service to the user’s device. For example, Netflix estimates the likelihood that the user will watch a particular title in its catalog based on a number of factors including: the user’s “*interactions with our service* (such as your viewing history and *how you rated other titles*).”

Appx1221(¶121)(emphasis added); *see also* Appx1244-1245(claim chart for limitation 1f).

It is not clear from Avago’s brief whether it is still pressing what the Board called Avago’s implicit construction of “based on the provision of a media content streaming service” to mean based on the streaming of media content. Appx18 (“[Avago’s] arguments appear to equate [‘provision of a media content streaming service’] with the streaming of media content.”). But it should be noted that the Board expressly rejected Avago’s implicit construction, explaining that the “claimed phrase is ‘provision of a … service,’ and the words ‘media content streaming’ specify the type of ‘service’ provided.” Appx18-19. In other words,

"based on the provision of a media content streaming service" refers to more than just the streaming of the media content itself, and also includes other aspects of the service.

### 2. Lee's Usage History

The Board correctly found that Lee's usage history teachings satisfy all limitations of claim 1. Avago contends that Lee's usage history is not UCI (Br. 43-47) and that it is not retrieved, updated, or used to control provision of the multimedia content streaming service (Br. 47-48). This Court should affirm because substantial evidence supports the Board's finding that Lee's usage history is UCI, and that Lee teaches retrieving, updating, and using usage history to control provision of the multimedia content streaming service.

#### a. The Board correctly found that Lee's usage history is UCI because it is used to configure the recommended content list.

Lee's usage history satisfies Avago's construction of UCI because, as the Board found, "it is associated with a given user and is used to configure the recommended content list." Appx38. Avago argues that substantial evidence does not support this finding because "Lee's disclosure demonstrates that Lee's system does not provide recommendations based on usage history … but instead provides recommendations based on user preferences and device information." Br. 44. Avago presented an extreme version of this argument to the Board, that "[n]othing

in Lee … even suggests that usage history provides content recommendations." Appx38 (quoting Appx3053-3054(POR)).

The Board soundly rejected Avago's argument, observing that it "is belied by the reference" because Lee's Section 3.1 expressly "states that a user 'is presented with *a recommended content list created based on usage history*, which is the information of the content the user has played through the streaming service,' as well as the user's preferences." Appx38 (quoting Appx1133(§3.1)).

> Client 1 requests for connection by logging on the server agent. The server agent identifies the user based on user ID and password, and implements user certification. If one is already a registered user, one is presented with a recommended content list created based on usage history, which is the information of the content the user has played through the streaming service and the details of the user profile, which is based on the information set by users regarding their preferred content title, actor and actress, director, producer, and genre. If one is using the service for

Appx4041(Demonstrative)(reproducing Appx1133(§3.1)). Therefore, the Board's finding is supported by substantial evidence.

Instead of demonstrating that Lee's Section 3.1 disclosure does not mean what it says, Avago raises a litany of arguments that do not overcome Lee's disclosure. *First*, Avago essentially argues that the usage history disclosure should be ignored because it is not repeated in other portions of Lee, including the title and abstract. Br. 44 (quoting Appx1129(title, abs.), Appx1135(§4)). The Board

correctly rejected this argument, explaining that Avago "cites to several other passages of Lee, but none undercut or contradict this teaching." Appx38.

*Second*, Avago argues that "Lee even confirms that recommendations based on viewing history are not possible." Br. 44-45. Not so. Avago relies upon Section 4's statement that "further studies on determining the preferred content by automatically figuring out the user's preferences and device character information are necessary." Appx1135(§4). But this sentence relates to the issue of manually versus automatically updating *user preferences* – it has nothing to do with *usage history*. Moreover, Section 4 is one of the passages that the Board considered and found did not "undercut or contradict" Lee's usage history disclosure. Appx38 (citing Appx1135(§4)). Avago's reliance on its expert declaration is similarly misplaced because paragraph 46 is from the portion dedicated to *user preferences*, rather than *usage history*. Br. 45 (citing Appx3133-3134(¶46)); Appx3131-3134 (paragraph 46 is below the "Lee's User Preferences" heading and above the "Lee's Usage History" heading).

*Third*, Avago argues that, "[w]hen read in context, … Lee's recommended content list is based on the content the user has played through the streaming service only insofar as it is based on what the user was last watching for which there is stop point information." Br. 45-47. While Avago's argument is hard to follow, the subsequent three paragraphs make its position clearer – Avago

contends that the "usage history" referred to in Section 3.1 is *only* "the information used to enable the stop point functionality, [and is] not a log of all content the user has viewed." Br. 46. However, the Board correctly rejected this argument because it is contradicted by Lee's disclosures. Appx39-44.

As an initial matter, this argument is nothing more than a rehash of arguments Avago raised for the first time in its Sur-Reply (Appx3972-3981), which the Board found untimely and forfeited. Appx39. As such, Avago was required to show that the Board abused its discretion in finding these arguments forfeited. However, its brief does not even attempt to address whether there was an abuse of discretion.

Turning to the merits, Avago's first contention is that the Board erred in finding that usage history is stored in the User History database. Br. 45-46. Not so. The Board noted that the top-left of Figure 3 shows that "Lee's server includes: (1) a 'User DB' that has 'User Preference' and 'Usage History' databases, and (2) a 'Contents DB' that has 'Contents Metadata' and 'A/V Contents' databases." Appx42.




**Figure 3. Streaming System Structure**

Appx42 (reproducing Appx1131(Fig. 3)). The Board also observed that "Lee teaches that the Usage History database stores and manages a 'content list' ***and*** 'the timestamp' information." Appx42 (citing Appx1132(§2.5)). Based on this, the Board found "that Lee teaches that its Usage History database stores a list of previously viewed content along with a corresponding timestamp identifying the stop point associated with [the] most recent streaming of that content," and that "this understanding is consistent with the remainder of Lee's disclosure," including the Section 3.1 disclosure. Appx42-43. Avago fails to show how the Board erred in making this finding, and notably does not address Figure 3 and its illustration of "Usage History" being stored in a database.

In any event, Avago fails to address the Board's detailed findings rejecting its argument. Appx43-44. The Board noted that Avago "fail[s] to consider that the Usage History database *also includes a content list*, which shows that Lee stores an identification of content with the corresponding stop points." Appx43 (citations omitted). The Board noted that Lee's reference in Section 2.5 "to a 'content *list*' indicates this database is capable of identifying multiple items of content, and Lee makes it clear that the content itself is stored elsewhere." Appx43 (citations omitted). The Board explained in a footnote how there are two different content lists. *Id.* (n.22). Avago acknowledges that the Board found that there are different content lists but argues that the Board nevertheless conflated the two lists without explanation. Br. 46.

Finally, Avago does not address the Board's detailed findings that explain how Figure 8 illustrates Lee identifying at least three different previously viewed content items with associated stop point information. Appx43-44. This example alone shows that Lee's usage history contains much more than stop point information for the last viewed piece of content.

**b. The Board correctly found that Lee's usage history is retrieved, updated, and used to control provision of the media content streaming service.**

Avago's conclusory, single page of arguments that substantial evidence does not support the Board's findings that Lee's usage history is retrieved, updated, and

used to control provision of the multimedia content streaming service lack merit. Br. 47-48.

*First*, Avago's argument that "Lee does not disclose that usage history is stored, so it cannot disclose that is retrieved" (Br. 47), is essentially the same argument Avago offers for why usage history is not UCI, and fails for the same reasons. *See, supra* §IV.D.2.a.

*Second*, Avago's argument that Lee does not teach updating usage history (Br. 47) is a new argument that it failed to present to the Board, and thus was forfeited. The relevant portions of the POR (Appx3051-3058) and Sur-Reply (Appx3972-3982) did not contest Netflix's explanation of how Lee's usage history satisfies limitation 1f (Appx146-148). Thus, Avago should not be heard to complain that the Board was persuaded by and credited Netflix's explanation and evidence for limitation 1f. In any event, Avago's argument that "[s]topping content mid-playback is not usage history; it is a reference to stop points, which is a different form of alleged UCI" mischaracterizes the Board's finding. Br. 47. The Board did not conflate stopping playback with usage history. Instead, the Board explained its understanding of how Lee operates, and concluded that usage history is *updated* when playback is stopped. Appx36-37. The fact that stop point information is also updated at the time playback is stopped does not preclude updating the usage history when playback is stopped.

*Third*, Avago's argument that Lee does not teach controlling provision of a media content stream service based on usage history (Br. 48) lacks merit because it does not address the Board's findings as to limitation 1e. After recounting its understanding of Lee's system, the Board found that Lee's server "'control[s]' provision of the service based on [the] usage history (by providing a recommended content list based on that history)[.]" Appx37. Instead of addressing the Board's findings and supporting evidence, Avago claims, without support, that "the only process the usage history is used for is to provide the stop point as part of the streaming resuming request." Br. 48 (citing Appx1134(§3.6)). But the cited passage of Lee does not say anything about usage history, let alone say that its only use is to provide stop point information. Appx1134(§3.6).

Finally, Avago complains that the "Board mistakenly ignored Dr. AlRegib's testimony." Br. 48. Avago does not demonstrate that the Board erred in according Dr. AlRegib's testimony little weight. The Board explained that Dr. AlRegib strayed into opining on the content and sufficiency of the Petition (rather than factual matters), repeated the same logical errors included in Avago's arguments, and offered opinions contradicted by Lee's clear disclosures without sufficient explanation, such as Lee's teaching of usage history being used to recommend content. Appx39.

### c. The Board did not err in finding Avago's untimely arguments forfeited and unpersuasive.

The Board correctly found that Avago's untimely, new arguments in its Sur-Reply concerning Lee's usage history were forfeited. Appx39-40. Avago fails to demonstrate that the Board abused its discretion and does not even mention the abuse of discretion standard anywhere in its brief. Moreover, any error in finding that Avago forfeited its new arguments is harmless because the Board provided a detailed explanation of why the forfeited arguments fail on the merits. Appx40-44 ("Even if [Avago's] argument had been properly raised, it would not have been persuasive.").

The Petition explained that Lee expressly discloses in Section 3.1 that, following user login, a user "is presented with a recommended content list created based on usage history[.]" Appx140-141 (quoting Appx1133(§3.1)); Appx139-142 (analysis of limitation 1e for usage history). The POR did not address Section 3.1's clear disclosure. Appx3054-3056. Instead, Avago recounted other passages from Lee and asserted that, "[o]ther than these passages, Lee provides no teaching or suggestion of how content recommendations are generated or provided." Appx3054-3056; Appx39-40 (n.19).

In its Reply, Netflix highlighted Avago's failure to address Section 3.1's disclosure. Appx3428 ("[Avago] has no response, other than to pretend it does not exist."). In its Sur-Reply, Avago belatedly attempted to address Section 3.1's

disclosure, arguing that "[Netflix] does not attempt to explain this sentence within the context of Lee as a whole." Appx3974-3981. The Board held these new arguments forfeited, including Avago's argument that usage history is somehow not stored in the User History DB and that usage history somehow does not provide any configuration function. Appx39-40.

The Board did not abuse its discretion in finding Avago forfeited its additional arguments given that the Section 3.1 disclosure was prominent evidence in the Petition, and Avago made no attempt to address it in its POR. Moreover, Netflix's commenting on Avago's failure to address Section 3.1 in its Reply did not open the door for Avago to articulate new arguments attacking Section 3.1.

### 3. Lee's User Conditions (Stop Points)

The Board correctly found that Lee's user conditions (the stop points indicating where content playback was stopped) render obvious all limitations of claim 1. Appx45-49. Avago argues that Lee does not teach controlling provision of the media content streaming service based on stop points (limitations 1e and 1j) (Br. 50-51), and that Lee's stop points are not updated (limitation 1f) (Br. 51-52). This Court should affirm because substantial evidence supports the Board's findings that Lee's user conditions teach controlling provision of the media content streaming service based on the stop points and that Lee's stop points are updated.

### a. The Board correctly found that Lee's stop points are used to control provision of the media content streaming service.

Avago contends that limitation 1e and 1j are not satisfied because "[p]rovision of the multimedia content streaming service is not based on the stop points but is instead based on the user input." Br. 50-51. Avago's argument lacks merit because it ignores the Board's finding that Lee's server controls the service based on stop points and is premised on the similar incorrect claim construction that it presses in connection with Lee's user preferences. Appx48.

The Board found Lee's operations satisfy controlling provision of a media content streaming service based on stop points. Specifically, the Board observed that Lee sends a "stop point" to its server identifying the point at which playback of the content was stopped when a user stops streaming (Appx45; Appx1133-1134(§§3.1-3.2, §§3.6-3.9, Fig. 5), Appx1131(§§2.2.1, 2.2.2)). "If a user later selects that content from the recommended content list, then 'a pop-up window [is presented] asking if data streaming is to be continued.'" Appx45; Appx1134(§3.9, Fig. 8). "[I]f the user selects 'consecutive playing,' the server agent is notified and streaming resumes." Appx45; Appx1134(§3.9). Based on these findings, the Board reasonably found that Lee discloses controlling provision of its service based on stop points. Appx45-46.

Avago does not dispute the Board's detailed findings regarding Lee's operations. Rather, it argues that because user input is involved in these

operations, it is thus "the user's decision and selection to continue viewing content that controls provision of the multimedia content streaming service, not the system's use of stop points." Br. 50-51.

The Board noted that Avago's argument presents a "false dichotomy." Appx47. Avago never responds to the Board's observation that "Lee streams content based on *both* the user's input *and* the content stop point, and [Avago] fail[ed] to identify sufficient support for its assumption that the claimed 'control' can only be 'based on' one of these." Appx47. Avago again fails to identify any support for its assumption that the claimed "control" must exclude user input. In making this argument, Avago points to the similar argument it raises for "based on the provision of the media content streaming service" in the context of Lee's user preferences. Br. 51 (referring to Br. §II.C.1.a). Avago's argument here is unavailing for the same reasons. *See, supra* §IV.D.1.b.

**b. The Board correctly found that Lee's stop points are updated.**

Avago next argues that Lee does not disclose updating stop points. Br. 51-52. Avago mischaracterizes the Board's findings asserting that the Board "even recognized that Lee lacks [] a disclosure [of updating stop points]." Br. 52. Not so. While the Board noted that "Lee does not specifically address stopping and starting multiple times" (Appx47), the Board nevertheless explicitly found that Lee teaches or at least suggests updating stop points. Appx46.

The Board found Lee teaches "a user may begin content streaming from a stop point or from the beginning of the content." Appx46; Appx1134(§3.9)("In resuming content streaming, the user of client 1 and the user of client 2 are identified, and if both users are actually one and the same, streaming is resumed with client 2 with the content after the stop point of client 1."). The Board found Lee teaches that "a stop point is stored when the user stops streaming and logs off." Appx46; Appx1134(§§3.6-3.8)("Upon receiving the stop streaming request, the server agent commands the pumping server to stop multimedia content streaming to Client 1, then receives stop point information and saves it in the database."), Appx1133(Fig. 5). Moreover, the Board noted that Lee facilitates seamless access to multimedia content. Appx46; Appx1130(§1)("[U]sers receiving the data streaming service … are assured of seamless access to such multimedia content even if they switch devices."); Appx1135(§4)(" This study proposes the implementation of a server-client streaming system that enables the seamless data streaming of large amounts of multimedia content even if the user switches to another device or client."). Based on these disclosures, the Board correctly and reasonably found that a POSITA would have understood Lee to disclose "updating a prior stop point when a user resumes previously played content before stopping playback." Appx46.

The Board further found that Lee at minimum suggests updating a stop point because "pausing and resuming content several times" was known. Appx46-47. Indeed, even Avago admits that "starting or stopping a movie multiple times was known in 2007." Appx3983. There is no merit to Avago's argument that the Board failed to provide a motivation to modify because the Board found that Lee suggests updating stop points, which means that Lee does not require modification.

Avago's additional argument that the Board's findings are not supported by expert testimony misses the mark because the Board was within its discretion to recourse to logic, judgment, and common sense available to a POSITA to make its reasonable inferences from Lee's disclosure. Appx46-47 (citing *Perfect Web Techs. Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329) (Fed. Cir. 2009)). Here, Avago argues about pausing and resuming movies in the context of Lee. This is not a technical subject that requires expert testimony. As Avago's expert conceded, "the different ways that people accessed video streaming services" "is not really a very specialized … topic[.]" Appx3695-3697(161:10-163:5).

**4. Lee's Client Device Information**

Avago contends that Lee's client device information is not UCI (Br. 52-53) and that it is not updated (Br. 54-55). This Court should affirm because substantial evidence supports the Board's finding that Lee's client device information is UCI

and that Lee teaches updating client device information based on provision of the media content streaming service.

**a. The Board correctly found that Lee's client device information relates to users.**

The Board correctly found that Lee's client device information satisfies Avago's construction of UCI and that Lee's client device information renders obvious all limitations of claim 1. Appx49. Avago does not dispute that client device information is information used for configuration, but instead argues that the client device information "is not user configuration information because it relates to clients, not users." Br. 52.

*First*, the Board correctly found that client device information relates to users. Appx49-50, Appx52. The Board observed that Lee's "server stores and maintains, *for each user, client device information for the devices used by the user* to login to the service." Appx50 (emphasis added). The Board explained how Lee's disclosures show that client device information relates to users. Appx49-50. In particular, the "client device information is received by the server's User Manager (Appx1132(§2.4.3)), which stores 'the user ID, password, and device information' in the Mapping Table (Appx1132(§2.4.2))." Appx50. In addition, "Lee states that this Mapping Table 'manages client device information,' and a separate Active User Table that 'manages information on the currently connected user." Appx50 (quoting Appx1132(§2.4.2)).

Although Lee's teachings alone provide substantial evidence for the Board's finding that client device information relates to the user, Avago conceded this point at oral argument: "[t]hen with respect to device information, it *certainly corresponds to the user* when they bring it into the mapping table." Appx4323(116:15-17)(emphasis added). Even though the FWD relied upon Avago's concession in disposing of its UCI argument (Appx52), Avago does not address the concession.

**b. The Board did not broaden the construction of UCI to encompass client device information not related to a user.**

Avago further argues that "the Board's interpretation that UCI covers device information that is the same regardless of the user is legal error and should be reversed." Br. 53. In particular, Avago contends that Lee's client device information does not satisfy UCI because the client device information "does not depend on the user but is the same regardless of which user is operating the device." Br. 53.

Avago has consistently stated that the plain and ordinary meaning of UCI is "information, *related* to a user, that is used for configuration." Br. 14 (emphasis added); Appx16. However, the Board recognized that Avago's arguments against Lee's client device information sought to further narrow UCI to require UCI to be "'unique' to a user." Appx16. The Board correctly rejected Avago's further implied narrowing of UCI because Avago did "not directly address its implied

constructions, and its arguments provide no support for them." Appx17. There is nothing in the claim language that requires UCI to be unique to a user, and Avago conceded that UCI does not have a specialized meaning (Appx4263(56:13-57:11)).

The specification indicates that UCI is a broad term and does not include any limiting language that requires UCI to be unique to a user. Appx90(abs.), Appx97(3:33-37, 4:33-37), Appx99(7:41-8:6). Avago relies upon a passage of the specification that gives a number of non-limiting examples, and it does not require UCI to be unique to a user:

> The user configuration information *may comprise, for example*, information pertaining to device configuration *and/or* operational preferences specific to the device user *and/or* various use settings, network connectivity, service access, secure access information, network and service access information *and/or* preferences that are unique to particular users, *and/or* manner of use of available resources. *For* example, the user configuration information *may* specify various user specific device operational preferences, comprising favorite broadcast channels *and/or* website, favorite games, game status information, and media consumption settings.

Appx99(7:49-60)(emphasis added). At the end of the passage containing the quoted material, the patentee expressly states that the alleged invention "may also enable a set of the plurality of supported users to *share* user configuration information, wherein such set of users may be treated as a specific group." Appx99(8:7-9)(emphasis added).

Other portions of the specification recite "operational preferences specific to the device user," and also recite device configuration information without that qualification:

> The user configuration information may comprise information pertaining to device configuration and/or operational preferences specific to the device user and/or various use settings, connectivity, and/or use of available resources.

Appx102(14:56-59), Appx90(abs.). As for extrinsic evidence, Avago relies upon the conclusory opinion of its expert that does not overcome the intrinsic evidence, which demonstrates that UCI is not limited to information unique to the user.

Because Avago's narrow construction is not supported by intrinsic or extrinsic evidence, the Board correctly rejected its narrow interpretation that UCI must be unique to a user.

**c. Lee's client device information is updated based on provision of the media content streaming service.**

Substantial evidence supports the Board's finding that Lee's client device information is updated based on provision of the media content streaming service. The Board found that Lee's client device determines its client device information. Appx50 (citing Appx1131(§2.2.2)). The Board found that Lee's client device sends the device information to Lee's server when requesting a connection. Appx50 (citing Appx1131(§2.2.3)(client "requests the server for connection by sending user information, user preferences, and client device information…")).

Avago fails to address the Board's reasonable conclusion that a POSITA would have understood that Lee updates the client device information at least when a new device is used or when a previously-used device's information has changed. Appx51. Indeed, even Avago admits that "[a]t most, Lee teaches that client device information is changed by a user by changing the device and transmitted to the server upon login." Br. 54.

Avago also does not address the finding that Lee teaches the server updates the client device information after login (Appx51). This is a notable failure because Lee's disclosures demonstrate, and Avago's expert conceded, that Lee's client device information includes changing parameters, such as media codecs, display size, and network bandwidth. Appx51 (citing Appx1133(§3.2)); Appx3689(155:10-14), Appx3690(156:5-19), Appx3697-3698(163:11-164:9)).

Avago's attack on the Board's findings center on the construction of "provision of the media content streaming service." Avago does not dispute the Board's finding that Lee's client device information is updated. Rather, it argues that the Board erred in finding that Lee's client device information is updated based on "provision of the media content streaming service" because Lee's client device information is only updated at login, before the system provides any media content streaming service. Br. 54-55.

This argument is premised on an implied construction of "provision of the media content streaming service," as Avago is essentially equating this phrase with the streaming of media content. But Avago does not and cannot point to any intrinsic support for this construction. Nothing in the '938 patent limits the media content streaming service to only the streaming of content itself. Nor does Avago provide any extrinsic support. Indeed, the Board correctly found that provision of the media content streaming service *includes* the login interface. Appx54.

Moreover, Avago's implied construction is contradicted by its district court positions, where it admits that the provision of a streaming service is not limited to the streaming of content itself. Avago's Complaint alleges that provision of a media content streaming service is satisfied by a user's Netflix homepage, which is provided once the user logs in. Appx3799(265:9-14 ("Netflix controls provision of a media content streaming service *just by providing this web page of recommendations*, correct? A. Yes. That's what it says[.]") (emphasis added); Appx1220(¶¶119-120); Appx1240-1241(000016-17).

Rejecting Avago's implied construction, the Board correctly found "provision of the media content streaming service" is not limited to streaming and agreed with Netflix's mapping of the phrase to Lee's service, which includes Lee's login interface. Appx54-55; Appx18-19. The Board noted that Avago's argument was conclusory and "d[id] not explain why (or even clearly contend that)

[Netflix]'s contention is wrong." Appx54-55. On appeal, Avago does not cure this deficiency—it does not dispute Netflix's contentions and basically repeats its POR argument verbatim (Appx3069-3071), and continues to rely on expert testimony (Appx3155-3156(¶80)) that Board has found to be "conclusory assertion." Appx55.

Avago's additional argument that the plain language of the claim further demonstrates the Board's error lacks merit as well. Br. 55. Indeed, as the Board observed, Avago's "structure of the claim" arguments are insufficiently explained, and to the extent Avago assumes that the claim limitations must be performed in the order recited, precedents from this Court have explained how this assumption is misplaced. Appx55 (citing *Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1398 (Fed. Cir. 2014)); *see also Interactive Gift Express, Inc. v. Compuserve Inc.,* 256 F.3d 1323, 1342 (Fed. Cir. 2001) ("Unless the steps of a method [claim] actually recite an order, the steps are not ordinarily construed to require one.").

**d. The Board did not err in finding Avago's untimely arguments forfeited and unpersuasive.**

The Board correctly found that Avago's Sur-Reply arguments were untimely new arguments that are not responsive to Netflix's Reply. Appx55. Instead of explaining how these arguments are responsive to arguments of Netflix's Reply, Avago merely restates that the arguments in its Sur-Reply expanded on its

arguments that the client device information could not satisfy the plain language of the claims. Br. 55-56. But, Avago does not explain how the Board allegedly abused its discretion. In any event, the Board also found that even if Avago's arguments were timely, they were not persuasive. Appx55-56.

**E. The Board correctly found that Lee renders claim 6 obvious.**

The Board correctly found that Lee teaches "dynamically developing" its usage history and stop points. Appx61. Relying on its earlier findings for how usage history and stop points are automatically updated, the Board further found that "Lee automatically updates usage history and stop points and makes changes to this UCI as needed and appropriate given the use of the system." Appx61. The Board expressly relied upon Avago's dictionary evidence that defines "dynamic" as "[d]ependent on changing conditions or parameters" and "[i]n computers, an action or process which occurs when needed." Appx61 (quoting Appx3386).

Avago's contention that Board did not correctly apply the plain and ordinary meaning of "dynamically developing" lacks merit. *First*, the Board's construction is supported by Avago's dictionary evidence. The Board was not required to adopt the "continuously change" definition preferred by Avago, when it found other definitions, one specific to the computing context, more appropriate. *Second*, there is no merit to the argument that the Board "did not interpret dependent claim 6 as requiring anything more than claim 1." Br. 57. This argument is based on the

false premise that claim 1 already requires automatic updates to UCI, which is addressed above in connection with Lee's user preferences (*supra*, §IV.D.1.b).

Avago asserts the Board ignored Dr. AlRegib's testimony that was "squarely within his expertise." Br. 59. Not so. The Board appropriately did not credit Dr. AlRegib's testimony for offering legal conclusions regarding what is purportedly "correct under the law." Appx3165-3166; Appx62. Moreover, Dr. AlRegib offered no definition for "dynamically" and merely opined that Netflix's interpretation is "inconsistent with dictionary definition[.]" Appx3166. Having addressed Avago's "erroneous assumption that claim 1 requires automatic updates[,]" there was nothing left in Dr. AlRegib's testimony to consider.

Finally, Avago argues that Lee's updates are not dynamic because "provision of the streaming service is stopped before the stop point information is stored in the database[,]" and that "the usage history is updated 'when content is stopped mid-playback.'" Br. 58. The Board correctly rejected this argument, observing that Avago "faults Lee for recording changes after streaming has stopped," but "fails to identify anything that is required by the claim and missing from Lee." Appx62. Avago does not address this finding in its brief.

## F. The Board correctly found that Lee renders claims 17 and 18 obvious.

Avago does not dispute what the Board found with respect to Lee's teachings. Br. 60. As depicted in Figure 1, "Lee teaches that its external server is the source of the multimedia content that is ultimately streamed to the client devices." Appx68 (citations omitted). The Board also found that Lee's "home server controls provisioning of the service by providing a recommended list of content and streaming content to the client devices using that list." *Id.* And, Avago does not dispute that "Lee stores (or caches) at least some of the content on the home server before streaming it to the client devices." *Id.*




Appx1129(Fig. 1).

Regarding claims 17 and 18, Avago attacks the Board's interpretation of the claim. Avago argues that Lee's undisputed teachings do not satisfy claim 18 because "[t]he plain meaning of 'configured to control provision of the media content streaming service to the first computing device … from a server remote from the system,' requires the remote server to provide the media content streaming service to the first computing device." Br. 61.

Avago's interpretation should be rejected for several reasons. *First*, Avago's interpretation is based on an unsupported assumption that the claim precludes the service from using an external server where content originates. Avago assumes, without any reasoning or support, that the claimed "provision of the media content streaming service" cannot include providing content for the service.

However, as Netflix explained, nothing in the claim precludes the content from being stored/cached/buffered on a home server, and Lee's home server controls provision of the media content streaming service from the external server (where the content originates) to the client device. Appx3456-3457(Reply). The Board agreed with Netflix and noted that "the claim does not preclude content from being cached on Lee's home server after it is received from the external server and before it is provided to the client devices." Appx70.

Nor does the specification support Avago's construction. Nothing in the specification precludes service from an external server. Indeed, when the Board asked for additional intrinsic support, Avago admitted that there is nothing in the "specification that provides any more detail" on this. Appx4298-4299(91:21-92:1). Nor does Avago offer any extrinsic support.

*Second*, Avago's interpretation should be rejected because it is partially premised on an implied construction of "provision of the media content streaming service" that was correctly rejected by the Board (Appx54-55 and Appx18-19). As explained above (*supra*, §IV.D.4.c), without any support and in contradiction to its district court contentions, Avago conflates "provision of the media content streaming service" with the streaming of content. By arguing that claim 18 requires that the remote server directly stream content to the client devices, Avago again conflates provision of a media content steaming service with streaming media content. Netflix argued (Appx4316(109:10-24), Appx4318(111:6-16)), and the Board agreed that there is "no basis for imposing such a requirement on the claims," and noted that as "previously explained, [Avago]'s arguments are at least partially premised on an erroneous assumption that claims are limited to streaming." Appx70 (citing Appx18-19).

Additionally, Avago argues that claim 18 requires that "the provision of the media content streaming service must be *received* at the first computing device

from the remote server." Br. 60-61 (emphasis added). Avago essentially injects a new "receiving" step that is absent from the claim. Nor does Avago identify any additional support. Avago's argument that "[t]he claim identifies the sender (the remote server) and the recipient (the first computing device)" (Br. 61) lacks merit for the same reason. Avago further contends that the claims in *Apple Inc. v. MPH Technologies Oy*, 28 F.4th 254, 261 (Fed. Cir. 2022), are similar. Br. 62. Not so. Unlike claim 18, the *Apple* claim expressly recited a "receiving" step. 28 F.4th at 258 ("intermediate computer configured to receive from a mobile computer a secure message sent to the first network address").

## G. The Board correctly found that the combination of Lee and Smith renders claims 12, 16, 26 and 29 obvious.

The Board found claims 12, 16, 26, and 29 obvious based on a straightforward combination of "Lee's home server" teachings and "Smith's pre-materialized content" teachings. Appx79-80. Lee teaches a home server that "satisfies most of the limitations of claim 12." Appx79. Smith teaches two modes of operation, one in which content is transcoded in real-time and another in which pre-materialized content is served. Smith's pre-materialized content teachings satisfy the remaining limitation of "selecting a version of content, from a plurality of stored versions of content[.]" *Id.*

Avago asserts that the Board's conclusion regarding motivation to combine Lee and Smith was supported only by attorney argument. Br. 63-67. Avago

asserts that "[t]he Board erred by construing the complex Smith reference and concluding, contrary to the only expert testimony of record, that a POSITA would have been motivated to modify Lee in light of Smith." Br. 63. Contrary to Avago's assertion, the Board did not need to rely on expert testimony. *See, supra* §IV.B. The Board relied on intrinsic evidence to reach its conclusion based on disclosures of Lee, Smith, and background prior art references. Appx77-83.

The Board found motivation to combine Lee and Smith for at least two reasons. *First*, the Board found a motivation to combine based on the references themselves. The Board found that "using Smith's pre-materialized content would have furthered Lee's goal of a seamless streaming system by increasing the likelihood the user's client devices can playback content as the user switches between devices," (Appx80) which addresses a known problem (e.g., ensuring a seamless experience). *Intel Corp. v. Pact XPP Schweiz AG*, 61 F.4th 1373, 1380 (Fed. Cir. 2023) ("If there's a known technique to address a known problem using 'prior art elements according to their established functions,' then there is a motivation to combine."). Lee uses device character information to stream playable content to a client device "but does not explain how a seamless experience is ensured when a particular device cannot play content." Appx80 (citing Appx1129-1134(abs., §§1, 3.2, 3.9)). Smith teaches "content can either be

transcoded in real-time or 'pre-materialize[d]' and stored at the server." Appx80-81 (citing Appx1375-1377(§§2, 4.1, 4.1.3)). Here, Smith "allow[s] Lee to ensure a seamless experience" by increasing the likeliness playable content is available for a device. Appx 81. Therefore, a POSITA would have had a motivation to combine Lee and Smith because it addresses a known problem.

Furthermore, the combination of Lee and Smith is a combination of familiar elements according to known methods to yield predictable results. *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 416 (2007). There is no dispute that pre-materialization is known. Appx81 ("Indeed, the parties agree that pre-materialization was a known technique[.]") (citing Appx3458-3459, Appx3935-3936(401:5-402:7)). As the Board noted, "nothing indicates that implementing [pre-materialization] … would have required anything other than the predictable exercise of ordinary skill in the art." Appx81. Based on this, the Board found a POSITA would have had a motivation to combine Lee and Smith because it combines known pre-materialization techniques with Lee's home server according to known methods to yield predictable results.

*Second*, the Board evaluated the pros and cons of Smith's modes of operation. Avago asserted that "Smith's pre-materialization mode would run counter to Smith's preferred mode of operation." Br. 65. However, as the Board noted, Avago's expert disclaimed that the pre-materialization mode is inferior.

Appx81(citing Appx3944-3946(410:22-412:22)("Q. So you're not willing to say that pre-materialization is inferior to transcoding? A. It's different way, different mode.")). Furthermore, a combination need not rely on a preferred mode of operation. *In re Fulton*, 391 F.3d 1195, 1200 (Fed. Cir. 2004). Thus, even if transcoding is Smith's preferred mode of operation (it is not), it would not diminish a motivation to combine.

Furthermore, Avago's allegation that the combination of Lee and Smith is an "inferior combination" (Br. 67) is incorrect. The Board found the combination of Lee and Smith is not inferior but rather the result of "a predictable engineering tradeoff" between "reduc[ing] computational burden" by "storing multiple versions of content" and "reduc[ing] the amount of storage space… that might be used for different content" at increased computational costs. Appx81-82 (citing Appx1873(8:25-28)). This tradeoff is supported by the prior art, which discloses that "transcoding can be a very long CPU intensive process." *Id*. Moreover, even if the combination of Lee and Smith is somehow inferior, "a less than optimal result from a combination or modification does not necessarily defeat a finding of [motivation to combine]." *Pavo Sols. LLC v. Kingston Tech. Co.*, 711 Fed. Appx. 1020, 1028-29 (Fed. Cir. 2017) (nonprecedential); *see also Allied Erecting v. Genesis Attachments*, 825 F. 3d 1373, 1382 (Fed. Cir. 2016) ("[T]he disadvantage underscored by Caterpillar does not militate against finding the combination

proper.”). Thus, a POSITA would have had a motivation to combine Lee and Smith because the combination demonstrates a known tradeoff between computational burden and storage space, and even if the combination is inferior (it is not), the question of whether the combination is less than optimal is immaterial.

Avago asserts the Board reduced Avago’s argument to a “red herring argument that claim 12 does not require that all versions of content be stored… or that content to be streamed always be selected from the stored versions.” Br. 67. Avago advocates for an extreme interpretation of the claims, requiring storage of “dozens of different versions of each piece of content.” Br. 28. However, as the Board noted, claim 12 requires “a plurality of stored versions of content,” which may be satisfied by “two versions of a particular piece of content,” not dozens of stored versions of content. Appx82. Nothing in the claims of the ’938 patent requires storage of dozens of stored versions of content.

For all these reasons, the Board’s finding of motivation to combine Lee and Smith should be affirmed.

## V. CONCLUSION

The Board's Final Written Decision should be affirmed.

Dated: November 6, 2023

Respectfully submitted,

SHEPPARD, MULLIN,
RICHTER & HAMPTON LLP

*/s/ Harper Batts*
Harper Batts
Christopher Ponder
Jeffrey Liang

*Counsel for Netflix, Inc.*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1). This brief contains 12,994 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: November 6, 2023

Respectfully submitted,

SHEPPARD, MULLIN,
RICHTER & HAMPTON LLP

*/s/ Harper Batts*
Harper Batts
*Counsel for Netflix, Inc.*