**2023-1750**

# United States Court of Appeals for the Federal Circuit

AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED,

*Appellant,*

– v. –

NETFLIX, INC.,

*Appellee.*

*On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2021-01298, IPR2021-01334 and IPR2021-01335*

## REPLY BRIEF FOR APPELLANT

DAN YOUNG
MATTHEW C. HOLOHAN
KENT DALLOW
QUARLES & BRADY LLP
*Attorneys for Appellant*
8210 Southpark Terrace
Littleton, Colorado 80120
(303) 268-0066
dyoung@quarles.com
matthew.holohan@quarles.com
kent.dallow@quarles.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 1

- I. The Board relied on unsupported attorney argument ........ 1
- II. Lee is incomplete ........ 6
- III. The Board's obviousness determinations lack substantial evidence ........ 8
  - A. "User preferences" are not UCI ........ 8
  - B. "Usage history" is not UCI ........ 13
    - 1. "Usage History" is not used for configuration ........ 13
    - 2. "Usage History" is not retrieved, updated, or used to control provision of the service ........ 17
    - 3. Avago's usage history arguments were timely ........ 18
  - C. "Stop points" are not UCI ........ 19
  - D. "Client device information" is not UCI ........ 22
  - E. Lee does not render claim 6 obvious ........ 25
  - F. Lee does not render claims 17 and 18 obvious ........ 27
  - G. Lee and Smith do not render claims 12, 16, 26, and 29 obvious ........ 28

CONCLUSION ........ 31

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
637 F.3d 1324 (Fed. Cir. 2011) ....................25

*Barrday, Inc. v. Lincoln Fabrics Inc.*,
2023 WL 7871688 (Fed. Cir. Nov. 16, 2023) ....................10

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) ....................28

*Chamberlain Grp., Inc. v. One World Techs., Inc.*,
944 F.3d 919 (Fed. Cir. 2019) ....................18

*Donner Tech., LLC v. Pro Stage Gear, LLC*,
979 F.3d 1353 (Fed. Cir. 2020) .................... 7, 13

*Fanduel, Inc. v. Interactive Games LLC*,
966 F.3d 1334 (Fed. Cir. 2020) .................... 4, 15

*iLOR, LLC v. Google, Inc.*,
550 F.3d 1067 (Fed. Cir. 2008) ....................11

*Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*,
22 F.4th 1369 (Fed. Cir. 2022) ....................26

*M2M Sols. LLC v. Amazon.com, Inc.*,
2023 WL 2154964 (Fed. Cir. Feb. 22, 2023) ....................9

*Nobel Biocare Servs. AG v. Instradent USA, Inc.*,
903 F.3d 1365 (Fed. Cir. 2018) ....................10

*OSI Pharm., LLC v. Apotex Inc.*,
939 F.3d 1375 (Fed. Cir. 2019) ....................8

*Rembrandt Diagnostics, LP v. Alere, Inc.*,
76 F.4th 1376 (Fed. Cir. 2023) ....................19

*Rudolph Techs., Inc. v. Camtek, Ltd.*,
666 F. App'x 925 (Fed. Cir. 2016)....................................................................21

*Synopsys, Inc. v. Mentor Graphics Corp.*,
814 F.3d 1309 (Fed. Cir. 2016) ........................................................................2

## INTRODUCTION

The Patent Trial and Appeal Board ("Board") steamrolled through claims 1-29 with no supporting expert testimony and a paper-thin evidentiary record. Contrary to this Court's clear precedents, the Board disregarded nearly all of the competent expert testimony below and substituted its own speculations concerning a highly technical field to reach its invalidity findings. Netflix, Inc.'s Response Brief ("Response") fails to justify this plainly improper approach. Nor has Netflix shown that the meager, incomplete, and aspirational text of Lee discloses user configuration information ("UCI"). All of Lee's alleged UCI suffers from fatal flaws, rendering the record devoid of substantial evidence to sustain the Board's findings. The Board committed several additional independent errors concerning the dependent claims, excising explicit limitations and finding a motivation to combine disparate references based on pure hindsight. The Board's obviousness determinations concerning claims 1-29 should be reversed.

## ARGUMENT[1]

### I. The Board relied on unsupported attorney argument

Netflix relied on an unqualified expert, leading the Board to disclaim any reliance on that expert in its Final Written Decision ("FWD"). But the FWD

[1] In the interest of space, Avago will not respond point by point to Netflix's Statement of the Case. Netflix Br. 2-8. Avago disagrees with Netflix's characterizations to they extent they misstate the record.

reaffirmed the conclusions from the Institution Decision based on the very same expert. Netflix cannot support this turnaround.

First, Netflix faults Avago for citing "appeals from district court judgments." Netflix Br. 14. But the primary case on which Netflix relies, *Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1320 (Fed. Cir. 2016), analogized Board proceedings to "district court litigation." In either proceeding, expert testimony may be "essential" if "the technology in a particular case is sufficiently complex." *Id.*

The salient question, therefore, is whether the technology at issue is sufficiently complex to require expert testimony. Importantly, the Board made no specific findings as to the complexity of the technology, instead stating without elaboration, "relying on [Mr. Gray's] testimony would not have changed our patentability determinations." Appx13. And the only evidence Netflix cites for the proposition that the technology at issue is "not complex" consists of alleged admissions by Avago's expert, Dr. AlRegib, that say no such thing. Netflix Br. 15.

Netflix asserts that Dr. AlRegib "admitted that 'the different ways that people accessed video streaming services' 'is not really a very specialized … topic[.]'" *Id.* (quoting Appx3695-3697(161:10-163:5)). But this statement applies only to "the ways in which users accessed streaming video services," not the overall technology. Appx3695(161:10-25). Dr. AlRegib testified that the question of "access" would be familiar to "a user." *Id.* Dr. AlRegib was not characterizing the overall technology

as non-complex.

Netflix next asserts that Dr. AlRegib testified to "the simple nature of the technology in question," Netflix Br. 15-16, but the cited testimony pertains only to "how a user clicks videos to watch Netflix." Netflix Br. 16 (quoting Appx3809-3810(275:9-276:11)).

Elsewhere, Dr. AlRegib testified to his understanding of the complexity of the technology. For example, Dr. AlRegib testified that "understanding the claims does require significant experience in content streaming." Appx3111(¶23). While the Board declined to adopt Dr. AlRegib's formulation of the level of ordinary skill in the art, the Board itself held that a person of ordinary skill in the art ("POSITA") would have a master's degree in a technical field or a bachelor's degree plus three years of technical work. Appx11. Nowhere in the Board's decision is an explanation as to how a technology that requires this level of training, lacks the complexity that would demand expert testimony.

Given the lack of expert testimony, Netflix cannot dispute that the Board relied on attorney argument in reaching its conclusion. Ironically, the only disavowal of attorney argument by the Board that Netflix can cite is a footnote dismissing *expert testimony* provided by Avago. Netflix Br. 16 (citing Appx41(n.20)). The Board did not expressly disavow *Netflix's* attorney argument, which underpinned the Board's conclusion.

Thus, there was no basis for the Board to hold that Netflix satisfied its burden of persuasion. The sole case Netflix cites is inapposite. In *Fanduel, Inc. v. Interactive Games LLC*, 966 F.3d 1334, 1344 (Fed. Cir. 2020), the Court rejected the proposition that "the Board was somehow obligated to defer to [an] expert opinion of … unpatentability just because the patent owner … did not supply opposing expert guidance." In other words, the Court held that a *Petitioner* could not satisfy its burden of persuasion simply because a Patent Owner did not submit expert testimony. Netflix offers no precedent approving what the Board did here—holding that the Petitioner *did* satisfy its burden without expert testimony in the face of unrebutted contrary expert testimony.

Netflix cannot defend the Board's total dismissal of Dr. AlRegib's testimony. Netflix's Response discusses only two specific examples, and in both cases the Board improperly substituted "its own understanding or experience—or on its assessment of what would be basic knowledge or common sense" for the opinion of a qualified expert. *Fanduel*, 966 F.3d at 1344 (internal quotations omitted). In the first instance, Dr. AlRegib properly opined on how a POSITA would interpret a statement in Lee. Netflix Br. 17-18 (quoting Appx3138-3139(¶54)). Dr. AlRegib cited internal contradictions, explaining that Lee contains an isolated reference to "a recommended content list created based on usage history" without "describing how that might be accomplished." Appx3138(¶54). Dr. AlRegib then noted, "Lee expressly admits

that its disclosed system is not capable of this purported functionality, admitting that further study would be required." *Id.* Dr. AlRegib concluded, based on his expertise, that Lee did not sufficiently disclose or explain "a recommended content list created based on usage history." *Id.* The Board disregarded this analysis and accepted the isolated, unsupported statement in Lee at face value.

Netflix next cites an alleged contradiction in Dr. AlRegib's testimony concerning whether "Lee's client device information" is "static." Netflix Br. 18. Again, there are no inconsistencies. In his declaration, Dr. AlRegib explained that the client device information identified by Netflix as UCI—"media codec, CPU capability, display size, and other factors from the media player codec or devices' system information"—was "static information about a device." Appx3150(¶71). He went on to explain that "[w]hile it is possible that a codec in a device might not be immutable, neither Lee nor Petitioner ever suggests that that is the case" in Lee. Appx3151(n.3).

In the deposition excerpts cited (but never discussed) by the Board, Dr. AlRegib testified that (1) it is "a possibility" that "users could change the decoders … by installing new software" (Appx3689(155:10-14)); (2) a pre-configured (*i.e.* static) graphics card may be able to accommodate various monitor resolutions (Appx3690(156:5-19)); and (3) "network bandwidth just changes from time to time due to characteristics of the network." Appx3697-3698(163:11-164:9).

None of these statements contradict Dr. AlRegib's declaration or otherwise indicate that Lee's client device information is not static.

Regarding the decoders, again, Dr. AlRegib acknowledged *in his declaration* that it is possible to reprogram them, but that Lee does not suggest this. Regarding the graphics card, Dr. AlRegib clearly stated in his deposition that the number of available resolutions *is* static because "the graphics card is the one in charge of the resolution." Appx3690(156:11-12). And the fact that bandwidth changes is a matter of network conditions, not client device information.

Thus, Netflix has offered no justification for the Board's wholesale rejection of the opinions of the only qualified expert in the proceedings below.

## II. Lee is incomplete

The Board relied exclusively on Lee in finding the independent claims obvious despite Lee's facial incompleteness. Netflix could have included the TV-Anytime Specification in the record, but having declined to do so, neither Netflix nor the Board could properly speculate that undisclosed elements of the specification satisfy Netflix's burden.

Netflix's efforts to bolster the Board's improper findings fail. First, Avago's argument *was timely*. Avago first argued in its Patent Owner's Response ("POR") that Netflix failed to explain how the "usage history" is "influenced by the TV-Anytime Metadata Schema." Appx3053. In response to Netflix's expansive

arguments in its reply, concerning the various ways in which a POSITA could theoretically modify Lee's stop point functionality, Avago pointed out that Netflix made these broad assertions without a full understanding of Lee's stop points because that functionality is described in TV-Anytime. Appx3983. The Board nonetheless declared, without analysis or explanation, that this issue was not timely raised. Appx48. This alone was abuse of discretion. *See Donner Tech., LLC v. Pro Stage Gear, LLC*, 979 F.3d 1353, 1358 (Fed. Cir. 2020) (The Board must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.") (internal quotations omitted).

The Board also erred in dismissing Avago's argument on the merits. Netflix faults Avago for "not establish[ing] the necessity of considering the TV-Anytime Specification … for *the disputed issues*." Netflix Br. 19 (emphasis in original). But Avago explicitly argued in its Opening Brief that "the TV-Anytime Specification is necessary to understand the relationships and constraints among data in Lee's system, including the User History DB, mapping table, and the content database, relied on heavily by the Board," thus directly tying the missing contents of the prior art to several critical issues in the case. Avago Br. 37; *see also id*. at 38 (providing additional details as to how "Lee indicates that the missing portions are relevant and necessary"). Avago, of course, cannot explain precisely what TV-Anytime might have revealed about the disputed issues because Netflix chose to omit the

specification from the record, leaving its contents unknown.

The Board's highly inferential and speculative findings concerning what a POSITA might have done with the various data fields of Lee, with *no guidance* from the one document that explains what those data fields are, were unsupported by substantial evidence. *OSI Pharm., LLC v. Apotex Inc.*, 939 F.3d 1375, 1382 (Fed. Cir. 2019) ("Mere speculation is not substantial evidence.") (internal quotations omitted).

## III. The Board's obviousness determinations lack substantial evidence

### A. "User preferences" are not UCI

As explained in Avago's Opening Brief, the Board's conclusion that Lee's "user preferences" constitute UCI can only stand if the Court allows the Board to read the phrase "based on the provision of the media content streaming service" out of the claim. Avago Br. 40-42. There is no reasonable construction of claim 1 that would encompass manual updating of UCI untethered to the provision of the service.

Netflix argues, "'based on the provision of the media content streaming service' does not exclude 'manual updates,' nor does it exclude a user's input to a user interface that causes a server to update its database of user preferences." Netflix Br. 25. But Netflix's claim construction analysis is unsupported.

First, Netflix cites the Board's finding that "'a user's manual update to his preferences would have caused a corresponding update to the preferences stored in

the user preferences database of Lee's server.'" *Id.* (quoting Appx32). But this assertion, even if true, is irrelevant. In this scenario the update of the user preferences on the server is based on *the manual update by the user*, and is not based on *the provision of the service*.

Netflix attempts to close this gap by repeating the Board's conclusion that "the change in user preferences is '"based on the provision of the media content streaming service to the first computing device" because the server updates user preferences as a result of (and using) the user interface.'" Netflix Br. 26 (quoting Appx33). According to Netflix and the Board, the fact that the interface is part of the streaming service means that using the interface *as a tool* to create updates is the same as the updates being *caused by* the interface. But this is a facile reading of the phrase, "based on," with no support in the law or the intrinsic or extrinsic record. For example, in *M2M Sols. LLC v. Amazon.com, Inc.*, No. 2022-1122, 2023 WL 2154964, at *3 (Fed. Cir. Feb. 22, 2023), the Court construed the phrase, "managing … based upon the results of processing," to require that managing be based on processing results rather than management instructions. Similarly, here, UCI must be updated "based on" the service, not direct instructions by a user.

None of the specification references to manual updates that Netflix cites indicate that those manual updates are "based on the provision of the media content streaming service." In fact, one of the passages explicitly states that when "updating

of the user configuration information [is] performed manually," such an update is "based on user commands." Netflix Br. 27-28 (quoting Appx101(11:44-52)). The Board's finding that the specification does not explicitly disclose an update based on the provision of a media content streaming service, does not empower the Board to transform, "based on user commands," into "based on the provision of media content streaming a service," as it did here. Netflix Br. 28.

Further, the Board's finding that "the Specification includes no reference to such an update" is incorrect. Appx35. The specification distinguishes between manual updates "based on user commands" and automatic updates based on various parameters of the service itself. *See, e.g.*, Appx101(11:50-57). In view of these disparate uses of "manual" and "automatic," it was error to conflate them. *See, e.g.*, *Barrday, Inc. v. Lincoln Fabrics Inc.*, No. 2022-1903, 2023 WL 7871688, at *4 (Fed. Cir. Nov. 16, 2023) (holding that separate concepts in the specification should not be conflated in the claims).

While Netflix cites the "'presumption against a claim construction that excludes a disclosed embodiment,'" Netflix Br. 28 (quoting *Nobel Biocare Servs. AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1381 (Fed. Cir. 2018)), this presumption is overcome where, as here, the claim language or the intrinsic record supports such an exclusion. *Nobel Biocare*, 903 F.3d at 1381. Again, the specification draws a clear distinction between manual and automatic updates.

Nor is an explicit "qualifier" required to conclude that the causal relationship recited in the claim between the provision of services and UCI updates precludes manual inputs. Netflix Br. 28. The term "updating" *is* qualified within the claim because it is explicitly tied to the provision of services rather than manual commands. This Court has held that a recitation of "based on" in a claim, indicates a causal, *automatic* relationship "without further user action." *iLOR, LLC v. Google, Inc.*, 550 F.3d 1067, 1073 (Fed. Cir. 2008) (construing "'the toolbar being displayable based on a location of a cursor in relation to a hyperlink,'" as "limited to toolbars that are automatically displayed based on the location of the cursor"). Thus, the claim language itself qualifies "updating" as automatic.

The extrinsic evidence also supports Avago's construction. Netflix failed to offer any competent expert testimony, and thus the testimony of Avago's expert was unrebutted. And contrary to Netflix's characterization, Dr. AlRegib provided a detailed explanation of why a POSITA would have understood the claim to require that the system perform the "updating" rather than the user's manual input. Appx3131-3132(¶44).[2]

As there is no dispute that Lee only discloses manual updates of user preferences, Lee's user preferences do not meet the "based on" requirement as

---

[2] Netflix asserts that Avago's position is contrary to Avago's district court positions. Netflix Br. 29. The Court should disregard this argument as the Board disavowed reliance on Avago's infringement contentions. Appx57.

properly construed. Even under the Board's erroneous construction, however, Lee's user preferences fail to meet this element because Lee only discloses *setting* preferences, not *updating* those preferences later. Avago Br. 42-43. Netflix asserts that the Board was entitled to speculate that a POSITA would have deemed such updating obvious, because "storing and managing information," mentioned in Lee in reference to user preferences, is "a broad concept." Netflix Br. 22. But Netflix has no evidence to support this conjecture because its expert was excluded, and the Board could not rely on its own assumptions as to what a POSITA would have surmised.

Netflix next points to Lee's disclosure of "intelligent recommendation … based on the user preferences," and assumes that user preferences must be updated because a user's tastes may change. Netflix Br. 22-23 (quoting Appx1130(§1)). Netflix then declares that no "subject-matter expertise" is required to translate the concept of shifting tastes into a technical implementation. Netflix Br. 23. Again, there is no factual or legal support for Netflix's attorney argument, and thus this cannot sustain the Board's obviousness finding.

Given this lack of evidence, Avago's observation that "[t]he Board did not provide any motivation why it would have been obvious to a POSITA to modify Lee's system," is well-taken. Avago Br. 43; *see also* Netflix Br. 23. "[T]he Board's first finding that Lee suggests updating user preferences itself," relied upon by

Netflix, is entirely unsupported by *any* evidence, let alone substantial evidence. Netflix Br. 23. Further, Netflix is incorrect in asserting that this argument was forfeited. The Board's failure to support its obviousness conclusion with any competent evidence is the matter before this Court, and this lack of evidence includes the Board's failure to explain why a POSITA would have been motivated to modify Lee. *Donner Tech.*, 979 F.3d at 1358.

### B. "Usage history" is not UCI

#### 1. "Usage History" is not used for configuration

The sole basis for the Board's conclusion that Lee's "usage history" is used for configuration, is an isolated phrase in Lee stating that a user "is presented with a recommended content list based on usage history." Appx1133(§3.1). But Dr. AlRegib explained that, notwithstanding this unexplained phrase, there is no disclosure in Lee as to how a POSITA would actually create such a list. Avago Br. 45-47. This is confirmed by additional discussions in Lee, confirming that usage history is not among the data used to construct content recommendations. Avago Br. 44. The Board chose to ignore these additional disclosures, as does Netflix. Netflix Br. 31-32.

Netflix also has no answer for Lee's explicit admission that "further studies on determining the preferred content by automatically figuring out the user's preferences and device character information are necessary," confirming that Lee

had not solved content recommendations based on usage history. Avago Br. 44-45 (quoting Appx1135(§4)). Netflix states, without evidentiary support, that this sentence is irrelevant because it pertains exclusively to user preferences rather than usage history. Netflix Br. 32. But this ignores the fact that the sentence discusses the need for further study on "determining preferred content," which is the operation that Netflix asserts Lee solved using usage history. *Id.*; Appx1135(§4).

Netflix applies a similarly narrow reading of Dr. AlRegib's testimony, the only evidence in the record on this issue. Contrary to Netflix's assertions, the cited paragraph of Dr. AlRegib's declaration in Avago's Opening Brief, Avago Br. 53, explicitly challenges Netflix's assertion that "'Lee teaches generating recommendations based on preferences while tracking usage history.'" Appx3132(¶45) (quoting Appx150). Dr. AlRegib went on to explain that "a POSITA would have recognized, at the time of the invention, the difficulty of developing recommendation engines, let alone integrating them into a system such as Lee's." Appx3133(¶46). Dr. AlRegib provided extensive testimony explaining how "usage history" in Lee is not UCI. Appx3134-3144(¶¶49-63). All of this evidence, unchallenged by any qualified expert, was ignored by the Board.

Netflix also continues to ignore the explicit disclosures of Lee, denying that Lee's "usage history" is limited to identifying what the user was watching most recently. Avago provided a detailed explanation as to why this is the case in its

Opening Brief. Avago Br. 45-47.[3]

Netflix cannot dispute that Lee does not explicitly disclose storing "usage history" in the "User History Database." Instead, Netflix relies on Figure 3 of Lee, which does not show a "User History Database" at all. Netflix Br. 33-34; Appx42; Appx1131(Fig. 3). To the extent Netflix seeks to argue that the block labeled "Usage History" in Figure 3 was meant to convey "User History," such an inference would require something beyond the Board's own "assessment of what would be basic knowledge or common sense." *Fanduel*, 966 F.3d at 1344 (internal quotations omitted). Netflix has no such evidence.

As for what the "User History" database stores, Netflix can only point to the sole usage of that term in Lee's text, stating that "User History DB stores/manages content list and the timestamp of the user's most recent log-on to the server and received streaming." Netflix Br. 33-34; Appx1132(§2.5). Again, there is no mention here of "usage history," and thus no evidence that usage history is stored in that database.

Regarding the "content list" stored in the "User History DB," Netflix inaccurately states that Avago failed to address the Board's findings on this point, which, in fact, were refuted in detail in Avago's Opening Brief. Netflix Br. 35;

---

[3] Netflix first asserts that this argument was untimely. Netflix Br. 33. This is wrong, as discussed *infra* §III.B.3.

Avago Br. 46-47. As Avago explained, there is no evidence to support the Board's determination that the "content list" stored in the User History Database is the "recommended content list" allegedly configured by usage history. Netflix offers no evidence in its Response, instead simply parroting the Board's conclusory and speculative factual findings.

Finally, Netflix points to Figure 8 of Lee as allegedly showing that usage history contains "more than stop point information for the last viewed piece of content." Netflix Br. 35. This argument is irrelevant. The Board found that Figure 8 "depicts a content list" and shows "that stop points are stored for at least three different items of content." Appx43-44. Even assuming the Board's analysis of Figure 8 is correct (being unsupported by expert testimony), this fails to connect anything stored in the "User History Database" with a "*recommended* content list." The Board even noted that the "'content list'" of Figure 8, and the "recommended content list" associated with usage history, are separate before inexplicably concluding that the "'content list'" in the "User History DB" is the very same "recommended content list." Appx43(n.22).

In short, the "User History Database" stores only (1) timestamps and (2) a list of content resources associated with those timestamps, and is used solely to resume playback after a content resource has been stopped. It does not store a "recommended content list" based on "usage history," and thus the sole basis for the

Board's conclusion that "usage history" is UCI is invalid.

### 2. "Usage History" is not retrieved, updated, or used to control provision of the service

Netflix cannot show that "usage history" is retrieved, updated, or used to control provision of the service. Regarding retrieval, Netflix offers no arguments independent of its argument that "usage history" is stored in the "User History Database," which is incorrect as discussed above. Netflix Br. 36.

The Board's conclusion, "Lee teaches 'updating' the usage history when content is stopped mid-playback," is also incorrect. Appx37.[4] Netflix seeks to defend the Board's conclusion by asserting that "usage history is *updated* when playback is stopped," but offers nothing to support this conclusion. Netflix Br. 36 (emphasis in original). The Board's decision contains absolutely no explanation of the "updating" requirement beyond the single sentence, "[w]e also find that Lee teaches 'updat[ing]' the usage history when content is stopped mid-playback, satisfying element 1f." Appx37.

Regarding controlling provision of a service, Netflix again cites nonexistent findings by the Board, when the Board's entire analysis is a statement that "we find that Lee's server 'retrieve[s]' usage history corresponding to the user and 'control[s]'

---

[4] Netflix asserts that this argument is forfeited because it was not raised below. Netflix Br. 36. Netflix is wrong, as Avago obviously could not have challenged a finding by the Board before it was made.

provision of the service based on that usage history (by providing a recommended content list based on that history), satisfying elements 1d and 1e." *Id*. Further, Avago's reference to §3.6 of Lee to explain how the alleged "usage history" is used is accurate, as this section is part of the description of Figure 5, which shows the "content list" being delivered and used by the system. Avago Br. 48; Appx1133-1134.

Finally, Netflix cannot justify the Board's wholesale, summary dismissal of Dr. AlRegib's substantive testimony concerning "usage history," particularly in view of Netflix's lack of contrary evidence. Netflix Br. 37. The Board failed to adequately explain its refusal to consider Dr. AlRegib's opinions, and thus the Board's findings are unsupported by substantial evidence.

**3. Avago's usage history arguments were timely**

Avago demonstrated in its Opening Brief that its arguments regarding usage history were merely "'elaborat[ions] on their arguments on issues previously raised,'" and thus timely. Avago Br. 48 (quoting *Chamberlain Grp., Inc. v. One World Techs., Inc.*, 944 F.3d 919, 925 (Fed. Cir. 2019)). Netflix's sole contrary argument is its allegation that POR did not explicitly reference the sole sentence in Lee's §3.1, which was the centerpiece of Netflix's "usage history" theory in Netflix's reply. Netflix Br. 38. But Avago directly referenced Netflix's usage history argument and provided a detailed explanation as to how the full disclosure of Lee demonstrates

that usage history is not UCI. Appx3051-3058. Thus, "recount[ing] other passages from Lee" was directly responsive to Netflix's usage history argument that ignored Lee's complete disclosure. Netflix Br. 38.

Netflix chose, in its reply, to highlight the lack of express quotation of Lee's §3.1, as though this rendered Avago's argument deficient. *Id.* *In direct response to this argument*, Avago expanded upon its prior argument and provided further explanation as to how §3.1 fails to show that "usage history" constitutes UCI. Avago Br. 49. Expanding on this argument further, Avago explained that usage history is not stored in the User History Database. *Id.* "[T]he very nature of the reply and sur-reply briefs are to respond (whether to refute, rebut, explain, discredit, and so on) to prior raised arguments within the confines of 37 C.F.R. §42.23(b)." *Rembrandt Diagnostics, LP v. Alere, Inc.*, 76 F.4th 1376, 1384 (Fed. Cir. 2023). That is what Avago did in its sur-reply.[5]

### C. "Stop points" are not UCI

Lee's "stop points" are not UCI because they are not used to control provision of the media content streaming service and because they are not updated, both of which are explicit claim requirements.

Again, the Board and Netflix conflate provision of the service "based on" a

[5] Netflix asserts that any error by the Board in deeming Avago's argument waived was "harmless" because the arguments "fail on the merits." Netflix Br. 38. This is incorrect for the reasons discussed *supra*.

user input with provision of the service "based on" the tool operated by the user. As Netflix notes, this is a claim construction issue similar to the dispute over "user preferences." Netflix Br. 40. Indeed, the facts concerning the use of "stop points" are not in dispute, and Netflix acknowledges that "'if *the user selects "consecutive playing,"* the server agent is notified and streaming resumes.'" *Id.* (quoting Appx45, Appx1134(§3.9)) (emphasis added). The parties agree that it is a user action, not the stop point, that causes the service to be provided.

Netflix nonetheless seeks to defend the Board's specious conclusion that "'Lee streams content based on both the user's input and the content stop point,'" when the stop point is nothing more than a tool *used by* the user to request content. Netflix Br. 41 (quoting Appx47). Again, this does not satisfy the "based on" language in the claim for the reasons discussed *supra* §III.A.

Separately, Netflix has not shown that stop points are "updated," an independent requirement for UCI. First, Netflix incorrectly accuses Avago of mischaracterizing the Board's concession that Lee does not explicitly disclose updating stop points, before quoting the Board saying just that—"'Lee does not specifically address stopping and starting multiple times.'" Netflix Br. 41 (quoting Appx47). None of the quotes from Lee, reproduced in Netflix's Response, explicitly disclose multiple stop points. Netflix Br. 42. Rather, Netflix leaps from Lee's disclosure of *single* stop points to *multiple* stop points simply because Lee

"facilitates seamless access to multimedia content." *Id.* But Lee's reference to "seamless data streaming" is associated with switching devices, not with starting and stopping multiple times. *Id.* (citing Appx1130(§1), Appx1135(§4)). The Board could only have, again, relied upon its own expertise in speculating that a POSITA would have found updating stop points suggested by Lee.

Nor is there a clear connection between "pausing and resuming content multiple times" and the technical approach of updating stop points. Netflix Br. 43 (quoting Appx46-47). Assuming without evidence that it would be obvious to modify a prior art reference to incorporate a concept known elsewhere in the art is pure hindsight. *Rudolph Techs., Inc. v. Camtek, Ltd.*, 666 F. App'x 925, 930 (Fed. Cir. 2016) ("[O]ne must 'be careful not to allow hindsight reconstruction of references to reach the claimed invention without any explanation as to how or why the references would be [modified] to produce the claimed invention.'").

It was improper for the Board to substitute its own expertise to achieve the numerous inferences and speculations required to arrive at the claimed invention from Lee, and Netflix's unsupported factual assertion, "[t]his is not a technical subject that requires expert testimony" (Netflix Br. 43), cannot save the Board's flawed approach.[6]

---

[6] Netflix's attempt to support this factual claim with Dr. AlRegib's testimony fails for the reasons discussed *supra* §I.

### D. "Client device information" is not UCI

Lee's "client device information" is not UCI because it is associated with devices rather than users, and because it is not updated based on provision of the media content streaming service.

Netflix first quotes various statements from the Board asserting that client device information is related to users. But this ignores the fact that, as explained in Avago's Opening Brief, Lee itself distinguishes between clients and users. Avago Br. 52-53. Lee's decision to refer to this information as "client device information" means that it is client information, not user information. To hold otherwise would be to vitiate the author's word choice. And Netflix even acknowledges, "client device information" and "information on the currently connected user" are managed by separate tables in Lee, further confirming client information and user information are distinct. Netflix Br. 44 (internal quotations omitted).

Nor did Avago's counsel make any "concessions" during oral argument that would support the Board's decision. Avago's counsel stated that client device information is associated with a user in some way in the specific instance in which the user logs on using the device. Appx4323(116:15-26). But the client device information would be associated with a different user if that user used the same device, and thus that client device information is not user information.

Netflix also does not refute Avago's showing that the client device information

is the same regardless of which user is operating the device. Avago Br. 53. Instead, Netflix disputes Avago's claim construction position that UCI must be unique to a user. Netflix Br. 46-47. But as shown in the passage quoted by Netflix, the only references to "users" in the description of UCI, describe information "*specific to the device user*" or "*unique to particular users*." Netflix Br. 46 (quoting Appx99(7:49-60)) (emphasis added). While UCI may contain other information, it must contain information "specific" or "unique" to particular users. The same is true of the additional passage Netflix quotes, reciting "operational preferences specific to the device user." Netflix Br. 47 (quoting Appx102(14:56-59)). And the fact that UCI may be shared among users is not inconsistent with the clear requirement that each user must also have unique UCI, which device information would not provide. Netflix Br. 46 (citing Appx99(8:7-9)).

Separately, nothing in Lee teaches or suggests updating the client device information based on provision of the service. Netflix asserts that "Lee's client device determines its client device information" and that "Lee's client device sends the device information to Lee's server when requesting a connection," and from there concludes that "a POSITA would have understood that Lee updates the client device information at least when a new device is used or when a previously-used device's information has changed." Netflix Br. 47-48. This is an unsupported speculative leap with no evidence in the record. Further, Netflix's argument concerning what

"Avago's expert conceded" are incorrect for the reasons discussed *supra* §I. Netflix Br. 48.

Netflix is again pressing an overbroad construction of "based on." Netflix does not dispute that client device information is only updated, if at all, at login. Netflix Br. 48-49. But Netflix asserts that "the media content streaming service *includes* the login interface" and thus updating information at login constitutes updating information "based on" the provision of services. Netflix Br. 49. But Netflix's theory that the *use* of an interface constitutes something being *caused by* the interface is meritless for the reasons discussed in *supra* §III.A.[7]

Finally, Netflix has not refuted Avago's showing that the structure of the claim denotes an order of operations in which login precedes service provision. While Netflix cites the presumption against claim limitations being performed in order, Netflix Br. 50, this presumption is clearly overcome here, where claim 1 sets forth a sequence of steps that are dependent on previous steps. For example, the step, "identify the first user based on the login information," cannot be performed before the previous step, "receive login information corresponding to the first user." This establishes a stepwise set of claim limitations that continue throughout the claim.

Regarding timeliness, Netflix barely addresses the issue at all, and does not

[7] Netflix again references Avago's district court infringement contentions, which the Court should ignore for the reasons discussed above. Netflix Br. 49.

address Avago's showing that its sur-reply arguments expanded upon its POR arguments. Netflix Br. 50-51. The Board therefore erred in treating Avago's arguments as untimely.

**E. Lee does not render claim 6 obvious**

The Board's conclusion that claim 6 relies on treating claim 6 as coextensive with claim 1 is improper. *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1335 (Fed. Cir. 2011) ("[W]here, as here, the claims describe the same relationship using different terms, the assumption is that the term in the dependent claim has a narrower scope."). This is implicit in Netflix's acknowledgement that the Board reached its conclusion by "[r]elying on its earlier findings for how usage history and stop points are automatically updated." Netflix Br. 51. The Board pointed to nothing new in Lee that purportedly taught or suggested "dynamic" updating beyond what it had already cited for claim 1.

The Board construed "dynamic" as "automatically" and "as needed." Appx61. The Board cited no evidence for its conclusion that "automatic" is equivalent to "dynamic," and such a construction would render claim 6 duplicative of claim 1, which already requires automatic updates. The only evidence for the Board's "when needed" formulation is its arbitrary decision to choose one of five different dictionary definitions for the word "dynamic." Appx61. But Dr. AlRegib testified, in the context of the '938 Patent, a different definition within that dictionary entry

was appropriate—"[c]haracterized by continuous activity or change." Appx3166(¶98) (quoting Appx3386). Netflix cannot support the Board's contrary conclusion.

First, Netflix does not explain why the Board found the other definition "more appropriate," and the record is devoid of any such explanation. Netflix Br. 51. Second, Netflix's only answer to Avago's claim differentiation argument is to dispute that claim 1 requires automatic updates, which is incorrect for the reasons discussed above. Netflix Br. 51-52.

Netflix also mischaracterizes Dr. AlRegib's testimony on this issue, which the Board improperly ignored. Dr. AlRegib did not offer "legal conclusions regarding what is purportedly 'correct under the law.'" Netflix Br. 52 (quoting Appx3165-3166). Rather, Dr. AlRegib testified, "Petitioner's interpretation of Claim 6 does not narrow the scope of Claim 1, and I understand that such an interpretation therefore cannot be correct under the law." Appx3165(¶97). In other words, Dr. AlRegib was testifying as to how a POSITA would interpret claims 1 and 6, which is squarely within the province of technical experts. *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1377 (Fed. Cir. 2022) (holding that a qualified expert may opine on claim construction "from the perspective of a skilled artisan").

And Dr. AlRegib *did* testify as to the proper definition of "dynamically," citing several dictionary definitions requiring "instant[]" or "continuous" change.

Appx3166(¶98). This was the only competent extrinsic evidence as to how a POSITA would interpret "dynamically" in claim 6.

Finally, Netflix does not substantively respond to Avago's argument that "an after-the-fact update cannot be UCI dynamically developed" (Avago Br. 58), instead simply repeating the Board's vague and unsupported declaration that Avago had not "'identif[ied] anything that is required by the claim and missing from Lee.'" Netflix Br. 52 (quoting Appx62). Avago's Opening Brief plainly explained precisely what is required by claim 6 and missing from Lee.

### F. Lee does not render claims 17 and 18 obvious

Netflix has not justified the Board's wholesale rewriting of claims 17 and 18. Again, the relevant technical aspects of Lee are not in dispute—Netflix acknowledges that "'the external server is the source of the multimedia content'" and that the "'home server controls provisioning of the service.'" Netflix Br. 53 (quoting Appx68). Only the claim scope is contested. Netflix Br. 54.

Netflix offers no support for its overbroad claim construction, in which the requirement that "the media content *streaming service*" is provided by an external server is met where only "the media content" is provided by an external server. Such a construction would read "streaming service" entirely out of the claim. Netflix highlights the lack of intrinsic evidence explicitly reciting this requirement, Netflix Br. 54-55, but Avago's construction is simply a matter of abiding by the well-

established requirement that "claims are interpreted with an eye toward giving effect to all terms in the claim." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006).

Netflix is also incorrect that Avago's position "conflates 'provision of the media content streaming service' with the streaming of content." Netflix Br. 55. As explained above, Netflix and the Board are conflating "provision of the media content streaming service" with content itself by asserting that the limitation is satisfied where *only* content, and not any service associated with that content, is supplied by an external source.

Nor does Avago's position inject a "receiving" step into the claim. Avago's position is straightforward and dictated by the claim language—the media content streaming service must originate at an external source. This limitation is left unfulfilled where only content, and not service, is provided by an external source.

### G. Lee and Smith do not render claims 12, 16, 26, and 29 obvious

Continuing its pattern of reaching highly technical obviousness conclusions without expert testimony, the Board concluded that a POSITA would have been motivated to combine Lee and Smith based solely on attorney argument and in the face of substantial and persuasive contrary expert testimony.

Netflix identifies two reasons the Board found a motivation to combine Lee and Smith, neither of which is supported by substantial evidence. First, Netflix

asserts that Smith's pre-materialized content would have solved the problem in Lee, of not being able to play content unsupported by a particular device. Netflix Br. 57-58. But nowhere in any of the statements from Smith, quoted by Netflix, is any reference to device compatibility. *Id.* Netflix's conclusion is pure hindsight, with no evidence, that Smith could have solved a problem in Lee that was in fact solved by the '938 Patent.

Nor is there any evidentiary support for Netflix's assertion that "the combination of Lee and Smith is a combination of familiar elements according to known methods to yield predictable results." Netflix Br. 58. In fact, as characterized by Netflix, the Board flipped the burden to prove obviousness by finding a motivation to combine where "'nothing indicates that implementing [pre-materialization] … would have required anything other than the predictable exercise of ordinary skill in the art.'" *Id.* (quoting Appx81). But it was *Netflix's* burden to prove that the combination of Lee and Smith was the predictable exercise of ordinary skill in the art, not Avago's burden to prove the opposite. Netflix's first basis therefore cannot support the Board's decision.

Netflix's second justification is that "the Board evaluated the pros and cons of Smith's modes of operation." Netflix Br. 58. Again, however, the Board had no expert testimony to guide its analysis toward a conclusion of obviousness, and the Board disregarded Avago's expert evidence to the contrary.

The error of the Board's independent analysis is clear from the fact that the Board determined that a POSITA would adopt the inferior mode of Smith, to solve a problem in Lee. Contrary to Netflix's assertion, there was substantial evidence in the record that the pre-materialization approach in Smith is inferior. Netflix Br. 59.[8] In particular, Dr. AlRegib testified that a POSITA would understand: (1) pre-materialization is not Smith's preferred mode of operation, (2) pre-materialization negates many of Smith's advantages, and (3) in the context of Lee's home-server system, storage is at a premium, and client load is relatively light. Appx3182-3183(¶123). The Board disregarded qualified expert testimony and reached its own conclusion based solely on attorney argument, which is reflected in the unfounded factual conclusions that Netflix quotes. Netflix Br. 59.

Finally, Netflix is incorrect in asserting that Avago's interpretation of the claims is "extreme." Netflix Br. 60. As explained in Avago's Opening Brief, the question of whether claim 12 requires all versions of content be stored on the home server, is irrelevant to the question of whether a POSITA would have combined Smith and Lee, and the Board's reliance on that interpretation was a non-sequitur. Avago Br. 67. There is no evidence in the record from which the Board could have reasonably concluded that a POSITA would have combined Lee and Smith.

---

[8] Netflix's assertion that Dr. AlRegib "disclaimed that the pre-materialization mode is inferior," is not supported by Netflix's record cite. Netflix Br. 58-59.

## CONCLUSION

The Board's determination that claims 1-29 are unpatentable should be reversed or, at a minimum, vacated and remanded.

Respectfully submitted,

/s/ Daniel S. Young
Daniel S. Young
QUARLES & BRADY LLP
8210 Southpark Terrace
Littleton, CO 80120
(303) 268-0066 (telephone)
(833) 793-0703 (facsimile)
Email: dyoung@quarles.com

*Counsel for Appellant*
*Avago Technologies International*
*Sales Pte. Limited.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1750

**Short Case Caption:** Avago Technologies International Sales Pte. Ltd. v. Netflix, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6,972 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ______ lines of text.
- [ ] the filing contains ______ pages / ______ words / ______ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ______).

Date: 12/14/2023

Signature: /s/ Daniel S. Young

Name: Daniel S. Young

Save for Filing